## Samuel L. Newberry v. Commonwealth of Virginia.

October 8, 1951.

Record No. 3869.

Present, All the Justices.

820

The opinion states the case.

*H. E. Widener, J. Livingstone Dillow* and *David E. Repass,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Frederick T. Gray, Assistant Attorney General,* for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

In the month of January, 1949, Samuel L. Newberry, sometimes hereinafter referred to as the defendant, was living with his brother, Ralph A. Newberry, and the latter's wife on a farm near the village of Mechanicsburg in Bland county. The couple had been married in the preceding August.

On the night of January 10, 1949, Samuel L. Newberry, accompanied by his three brothers, went to the sheriff of Bland county and told him that he had killed his brother's wife, decapitated the body, burned the head in the stove at the residence, and deposited the body beside the highway on Walker's mountain. Subsequent investigation showed these facts to be true.

In his earlier statements to the sheriff and the investigating officers the defendant said that the killing had been motivated by the frequent and continued improper advances of his sister-in-law to him. Incensed by this he said he had shot her in the head with a 22-caliber rifle and decapitated the body after life was extinct. In a later statement and in his testimony at the trial the defendant said that the killing had occurred accidentally when he struggled with the deceased in the effort to wrest from her a gun with which she said she was going to shoot her husband. Leaving the body in the barnyard he went to notify his brother of what had occurred. Upon his return, he said, he found that hogs had mutilated the face of the deceased, and panic-stricken by what had occurred he undertook to dispose of the body in the manner indicated.

There was evidence on behalf of the Commonwealth which tended to show that the deceased was alive when decapitated.

The two brothers, indicted jointly for the murder, elected to be tried separately. Ralph A. Newberry, the husband, was tried first and convicted of murder in the first degree. The judgment in that case was reversed for reasons not pertinent to the case

now before us. *Newberry* v. *Commonwealth,* 191 Va. 445, 61 S. E. (2d) 318.

The trial of Samuel L. Newberry, the defendant now before us, was begun in October, 1949. In a number of sessions held during that month and the following June efforts were made to secure a qualified jury from Bland county. These being unsuccessful fifty jurors were summoned from Washington county and from them a qualified panel was selected.

Upon the evidence adduced the jury thus selected found the defendant guilty of murder in the first degree and fixed his punishment at confinement for life in the State penitentiary. We granted a writ of error to the judgment entered on that verdict.

While assignments of error were made as to the sufficiency of the evidence and the correctness of the court's rulings on the instructions granted and refused, these have been abandoned. Hence, there is no occasion for us to relate the further sordid details of the alleged crime.

The assignments of error relied on before us challenge the action of the trial court in summoning a jury from Washington county. The specific contentions are:

(1) In so far as Code, § 19-187, authorizes the court, without the consent of the accused, to summon a jury or jurors from a county or corporation other than that in which the crime is alleged to have been committed, it is in violation of section 8 of the Virginia Constitution and is null and void.

(2) Conceding that Code, §19-187, is constitutional, the trial court exceeded its legitimate powers in summoning a jury from Washington county because, it is said, "there was no sufficient showing that a fair and impartial jury could not have been obtained in Bland county."

Code, § 19-187, provides: "In a criminal case in any court, if qualified jurors, not exempt from serving, cannot be conveniently found in the county or corporation in which the trial is to be, the court may cause so many of such jurors as may be necessary to be summoned from any other county or corporation by the sheriff or sergeant thereof, or by its own officer, from a list to be furnished either by the trial judge or by the judge of the circuit court of the county, or the corporation court of the city, from which the jurors are to be summoned."

While Code, § 19-198, which authorizes a change of venue in criminal cases on the motion of the Commonwealth, is not

directly involved in the present case, counsel on both sides agree that its constitutional validity is governed by the same principles as those which determine the validity of the companion statute, section 19-187.

The pertinent portion of section 8 of our Constitution, which has its origin in the Virginia Bill of Rights, adopted on June 12, 1776, provides: "That in criminal prosecutions a man hath a right to demand the cause and nature of his accusation, to be confronted with the accusers and witnesses, to call for evidence in his favor, and to a speedy trial by an impartial jury of his vicinage, without whose unanimous consent he cannot be found guilty. * * *"

■ The interesting and important constitutional questions involved have been fully briefed and ably argued on both sides. There is no disagreement as to the meaning of the word "vicinage" as used in this constitutional provision. In *Karnes* v. *Commonwealth*, 125 Va. 758, 762, 99 S. E. 562, 4 A. L. R. 1509, we said that the word as used here "corresponds with the territorial jurisdiction of the court in which the venue of the crime is laid." See also, *Howell* v. *Commonwealth*, 187 Va. 34, 41, 46 S. E. (2d) 37, 41. Both sides agree with this interpretation.

■ Nor is there any disagreement as to the premise that the constitutional provision secures to an accused the right to a trial by jury as it was known to the common law at the time of the adoption of our Bill of Rights. We so held in *Ex parte Marx*, 86 Va. 40, 48, 9 S. E. 475, and again in *Ragsdale* v. *Danville*, 116 Va. 484, 488, 82 S. E. 77.

The disagreement between counsel for the respective parties is in their concept of the rights of an accused at common law with respect to a change of *venire* and change of venue. Counsel for the defendant argue that at common law an accused, if he so chose, had the absolute and unqualified right to be tried in, and by a jury selected from, the vicinage or county in which the offense was alleged to have been committed, and that the constitutional provision was designed to preserve this right. If that position be correct, then, they say, the two related sections authorizing a change of *venire* or venue over the objection of the accused are invalid.

On the other hand, the Attorney General contends that under the common law as it was administered in England and the Colonies at the time of the adoption of our Bill of Rights in 1776,

the right of an accused to a trial in the county in which the offense was committed and by a jury selected from that vicinage was not unconditional or absolute, but was limited by or subject to the authority of the court, upon the motion of the prosecution, to cause the proceeding to be removed to, or a jury to be drawn from, another county, when an impartial jury could not be obtained or an impartial trial could not be had in the jurisdiction in which the venue was laid. In the light of this historical background, the Attorney General insists that the two statutes which are here attacked do not violate the constitutional provision relied upon.

There are authorities in this country which support the view of the defendant. The leading cases advancing this view are *Swart* v. *Kimball* (1880), 43 Mich. 443, 5 N. W. 635 (in which the opinion was written by Judge Cooley), and *People* v. *Powell* (1891), 87 Cal. 348, 25 P. 481, 11 L. R. A. 75. See also, *Althoff* v. *State* (1935), 209 Ind. 42, 197 N. E. 896, 102 A .L. R. 1031.

We are convinced from our investigation of the subject that the view of the Attorney General as to the right of an accused at common law with respect to a change of *venire* and change of venue is the correct one. The subject is fully discussed and the authorities, both English and American, are collected and reviewed in *Barry* v. *Truax* (1904), 13 N. D. 131, 99 N. W. 769, 65 L. R. A. 762, 112 Am. St. Rep. 662, 3 Ann. Cas. 191; *Commonwealth* v. *Reilly* (1936), 324 Pa. 558, 188 A. 574; *State* v. *See* (1947), 129 W. Va. 722, 42 S. E. (2d) 31. In each of these cases the court reached the conclusion that at common law the accused did not have the absolute right to be tried by a jury selected from the vicinage or the place where the crime was alleged to have been committed.

Among the English cases relied on in these decisions is *Rex* v. *Harris* (1762), 3 Burr. 1330, 97 Eng. Rep. 858, in which Lord Mansfield, speaking for the court said: "* * * if the matter cannot be tried at all, or cannot be fairly and impartially tried in the proper county, it shall be tried in the next adjoining county." (3 Burr., at page 1333.) In the earlier case of *Rex* v. *Cowle* (1759), 2 Burr. 834, 97 Eng. Rep. 587, Lord Mansfield had upheld the right of the Crown to a change of venue and *venire* where an impartial trial could not be had in the jurisdiction in which the venue was laid. With respect to such holding that opinion says: "There is not one authority to the contrary.

And in reason, it would be most absurd; because it would really be putting the place out of the protection of the law; and there must, in many important cases, be a total failure of trial, and consequently, of justice." (2 Burr., at page 860.)

For a collection of other English cases on the subject see Annotation, 80 A. L. R., p. 355.

■■ This provision in the Virginia Bill of Rights was designed, we think, to guarantee to an accused such rights as he had under the common law at the time the provision was adopted— that is, the right to an impartial jury in the vicinage or jurisdiction in which the crime is alleged to have been committed, subject to the right of the court to draw a jury from, or to change the place of the trial to, another jurisdiction whenever it reasonably appears that an impartial jury cannot be had in the jurisdiction in which the venue is laid. It guarantees to an accused a trial by an *impartial* jury of his vicinage, one which is free from prejudice either for or against him. It was not designed as an avenue of escape for one charged with the commission of an offense where a fair and impartial jury cannot be secured in his vicinage. Nor was it intended, under such circumstances, to put that community beyond the protection of the law.

As was aptly said in *Howell* v. *Commonwealth, supra,* "this provision of the Constitution must be given a reasonable construction consistent with other provisions, such as that for an impartial jury, permitting statutes providing for change of venue, a jury from another county and similar legislative provisions." (187 Va., at page 41, 46 S. E. (2d) at page 41.)

The precise question here involved was presented to this court in the petition for a writ of error filed in the case of *Garrett* v. *Commonwealth* in 1924. Garrett was indicted in the Circuit Court of Cumberland county for murder and was tried by a jury selected from Southampton county, on the motion of the prosecution, over his objection that such change of *venire* violated the rights guaranteed to him by this provision of our Constitution. An exhaustive petition for a writ of error was filed, citing the principal authorities relied upon by the defendant in the case now before us. This court rejected the petition and refused the writ of error. While no written opinion was filed, it appears from our order entered on June 16, 1924, that the writ was considered and refused on the merits. The order recites that the court was "of opinion that the said judgment is plainly

right," and that the effect of the rejection of the petition and the refusal of the writ of error "is to affirm the judgment" of the lower court.

We hold that the constitutional provision relied on does not inhibit the enactment of statutes authorizing a change of *venire* and change of venue in criminal cases on motion of the Commonwealth and over the objection of the accused.

Next, it is said that Code, § 19-187, is constitutionally defective because of the language which authorizes a change of *venire* where qualified jurors "cannot be conveniently found" in the jurisdiction in which the venue is laid. This language, it is said, permits a change of *venire* "solely upon convenience."

We agree that the constitutional provision is not satisfied by mere inconvenience in obtaining a jury. It must appear that impartial jurors cannot with reasonable effort be obtained in the jurisdiction and that there is a necessity for summoning them from without it. We held in *Richards* v. *Commonwealth,* 107 Va. 881, 59 S. E. 1104, that the statute meets this requirement. We there said: "* * * in order for the trial court to exercise the discretion vested in it under section 4024 (now section 19-187) of the Code, it should appear in some manner that such a course is reasonably necessary in order to obtain qualified jurors." (107 Va., at page 887.)

The final contention is that the trial court improperly exercised the authority given it under section 19-187, because, it is said, there was not a sufficient showing that a fair and impartial jury could not have been obtained in Bland county.

The record shows that during six sessions of the court, beginning on October 5, 1949, and continuing through June, 1950, unsuccessful efforts were made to secure an impartial jury in that county. During these proceedings more than one hundred persons were summoned on five separate writs of *venire facias* and were examined. The examination of these prospective jurors consumed over five hundred pages of typewritten manuscript and resulted in the selection of only sixteen tentatively qualified persons who were subject to further challenge.

A panel of forty-seven was summoned for the July, 1950, term, and were available for examination on October 10, the date to which the case had been continued. Sworn as a witness, the clerk testified that four or five of those summoned lived within two miles of the scene of the crime, at least seven had already

expressed opposition to capital punishment, and seventeen or eighteen were related either to the defendant or the deceased.

Moreover, the proceedings in this prosecution and in the companion case against Ralph A. Newberry had received wide publicity throughout the county. Being convinced from these circumstances, and the exhaustive examination of numerous prospective jurors, all of which are summarized in its orders, the court announced that it had reached the conclusion that a fair and impartial jury could not be procured in Bland county. Consequently, an order was entered authorizing the summoning of fifty jurors from the qualified list furnished by the judge of the Circuit Court of Washington county.

In the meantime the court had already indicated in its order entered on October 5, 1949, that it was doubtful whether a panel of qualified jurors could be secured from Bland county. Nevertheless, at the insistence of counsel for the accused, efforts were continued for nearly a year to complete the panel from the local county.

We have frequently said that the trial court, in the exercise of the powers as to a change of *venire* conferred upon it by this statute, must of necessity have a great deal of discretion, and that its ruling thereon will not constitute reversible error unless it plainly appears that such discretion has been improperly exercised. See *Chahoon* v. *Commonwealth,* 21 Gratt. (62 Va.) 822, 833; *Webb* v. *Commonwealth,* 154 Va. 866, 872, 152 S. E. 366; *Pannill* v. *Commonwealth,* 185 Va. 244, 252, 38 S. E. (2d) 457, 461.

In the light of the facts related, we are of opinion that the trial court properly exercised the discretion lodged in it by the statute, and granted a change of *venire* upon a sufficient showing that this was "reasonably necessary in order to obtain qualified jurors." *Richards* v. *Commonwealth, supra* (107 Va., at page 887).

We find no error in the record and the judgment is

*Affirmed.*