## Richmond

### CURTIS DARNELL POINDEXTER V. COMMONWEALTH OF VIRGINIA

September 1, 1977.

Record No. 761270.

Present: All the Justices.

*Lawrence Douglas Wilder (James L. Whitehurst; Lawrence Douglas Wilder's Law Office,* on brief), for plaintiff in error.

*K. Marshall Cook, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief), for defendant in error.

HARMAN, J., delivered the opinion of the Court.

Curtis Darnell Poindexter (Poindexter or defendant) was convicted by a jury of first degree murder of Judge Stewart A. Cunningham, malicious wounding of Sheriff Henry A. Kennon, the attempted murder of a state trooper and the possession and use of a "sawed-off" shotgun in the perpetration of a crime of violence.[1] The verdicts fixed Poindexter's punishment at life imprisonment on the murder charge, at 20 years imprisonment on the malicious wounding count, at eight years imprisonment on the attempted murder indictment and at 20 years imprisonment for the possession and use of a "sawed-off" shotgun in the perpetration of a crime of violence. We granted a writ of error to the orders sentencing the defendant on those verdicts limited to a single question, whether the trial court erred in granting the Commonwealth's motion to change venue from the Circuit Court of Louisa County.

On February 13, 1975, the defendant entered the courtroom of the General District Court of Louisa County and fired two or more shots with a "sawed-off" shotgun. Judge Stewart A. Cunningham, the presiding judge, was struck and killed by one or more of these shots. The defendant then went to the Clerk's

---

[1]. Two other felony indictments against the defendant had been dismissed at earlier stages in the proceedings upon defendant's motions to strike the Commonwealth's evidence.

office of the court where he shot and wounded Sheriff Henry A. Kennon. After wounding Sheriff Kennon, the defendant fled from the courthouse. Poindexter was apprehended later the same day after he was wounded when he attempted to ambush the police.

Prior to defendant's first trial in the Circuit Court of Louisa County, the Commonwealth, pursuant to Code § 8-208.26, moved for a change of venire, alleging that "it [would] be virtually impossible to assemble a jury [in Louisa County] which [could] render a fair and impartial [verdict] in this case." The defendant opposed this motion. The trial court, after hearing evidence, and the argument of counsel, denied the motion and set the indictments for trial.

The evidence in the consolidated cases was heard by a jury in the Circuit Court of Louisa County in a trial which commenced on December 9, 1975, and ended on December 16 with a mistrial when the jury was unable to agree upon verdicts. At this trial, as well as his subsequent trial in Augusta County, the Commonwealth's evidence showing the defendant to be the criminal agent was uncontroverted and unchallenged. The defendant relied upon a defense of insanity at this trial and at his subsequent trial in Augusta County.

On January 2, 1976, alternative motions for a change of venue or a change of venire were filed by the Commonwealth. At a hearing on those motions on January 12, the Commonwealth, in support of its motions, introduced affidavits of 13 citizens who worked and resided over wide geographical areas of Louisa County. All of the affidavits were executed on or after January 10. The affidavits were from a diverse group of persons, including a retired person, a minister-construction worker, a labor union business agent, a construction foreman, a self-employed carpenter, a laundry owner-operator, a service station operator, a furniture dealer and two other merchants.

Each of the affiants stated that he, in the regular course of his affairs, was in daily contact with a large number of citizens of Louisa County. Most of the affiants referred to the extensive media coverage of the defendant's plea of insanity and the evidence on this subject adduced at Poindexter's first trial. All of the affidavits disclosed that Poindexter's case had been the subject of great interest and widespread discussion in Louisa

County. Six of the affiants cited the "influence" of the Poindexter family and "feelings" in the community for the deceased judge as reasons that a fair trial in Louisa County was not then possible. Four of the affidavits stated that public opinion on the issue of the defendant's guilt or innocence and sanity or insanity had been "polarized" or "firmly polarized" as a result of the first trial, the media coverage attendant thereto and the ensuing discussions on the subject throughout the County. For those same reasons, seven of the affidavits stated that a fair and impartial trial in Louisa County was impossible because of the "bias", "heavy bias", "strong bias" or "local prejudice" which then existed in Louisa County.

The Commonwealth introduced, as an exhibit, an 80 page scrapbook of pictures, stories and editorials published in four newspapers which were generally circulated in and read by the citizens of Louisa County. These reports covered events from the time of the shootings through Poindexter's first trial and the filing of the Commonwealth's subsequent alternative motions for a change of venue or a change of venire. The news accounts related, in considerable detail, the evidence presented by the Commonwealth, the defendant's testimony at trial and the conflicting psychiatric evidence relating to the defendant's mental state at the time of the offenses charged. These press accounts also disclosed that the foreman of the jury at the first trial told a reporter, after discharge of the jury, that the jury deadlocked after eight of the jurors voted to acquit the defendant on grounds of insanity and four voted to hold the defendant guilty of first degree murder.

At the hearing on the Commonwealth's motions, the defendant produced no evidence and filed no counter affidavits to those filed by the Commonwealth.

After reviewing the evidence and finding that a fair trial was not then possible in Louisa County "because of the significance and the notoriety of this case and the impact upon the community of what has occurred", the trial court ordered a change of venue to nearby Augusta County, a holding which was tantamount to a finding that local bias and prejudice created such an environment and atmosphere as to make it reasonably appear that a fair trial in Louisa County was impossible or unlikely.

The defendant mounts a dual attack upon the change of venue granted by the trial court. He first argues that the change of venue statute, Code § 19.2-251 [2], is unconstitutional as it violates that part of Article I, § 8 of the Constitution of Virginia which provides an accused "shall enjoy the right to a speedy and public trial, by an impartial jury of his vicinage. . . ." This constitutional provision, the defendant argues, prohibits a change of venue unless it be upon motion of the accused or upon a waiver by the accused of that right.

The Attorney General correctly points out that Article IV, § 14(2) and Article IV, § 15 of the Constitution, when read together, specifically empower the General Assembly to provide by general law for a change of venue.

We rejected the same constitutional argument now advanced by the defendant in *Newberry* v. *Commonwealth*, 192 Va. 819, 66 S.E.2d 841 (1951), where the trial court granted a change of venire. We held there that § 8 of the 1902 Constitution, identical to Article I, § 8 of the 1971 Constitution, did not inhibit or proscribe the enactment of statutes authorizing a change of venire or a change of venue in criminal cases on motion of the Commonwealth over the objection of the accused, 192 Va. at 826, 66 S.E.2d at 845, for, as we pointed out:

> ". . . [Section 8] guarantees to an accused a trial by an *impartial* jury of his vicinage, one which is free from prejudice either for or against him. It was not designed as an avenue of escape for one charged with the commission of an offense where a fair and impartial jury cannot be secured in his vicinage. Nor was it intended, under such circumstances, to put the community beyond the protection of the law."

192 Va. at 825, 66 S.E.2d at 844.

For the same reasons stated in *Newberry*, we reject the defendant's constitutional attack upon Code § 19.2-251.

Alternatively and assuming, without conceding, Code § 19.2-251 to be constitutional, Poindexter argues the Commonwealth failed to make the requisite showing for a

---

[2.] Code § 19.2-251, in pertinent part, provides:
  "A circuit court may, on motion of the accused or of the Commonwealth, for good cause, order the venue for the trial of a criminal case in such court to be changed to some other circuit court. . . ."

change of venue. He argues that the affidavits filed by the Commonwealth are of a conclusory nature and fail to factually support the conclusion of the affiants that a fair trial could not then be had in Louisa County. The defendant also argues that the 13 affidavits, representing less than a tenth of one percent of the population of the county, lack "probative value" because they do not show the number of citizens of the county with whom the affiants were in contact. Noting that a venire of 100 was summoned for the first trial and that only 46 of the veniremen were needed to obtain the trial jury, defendant would have us infer that this indicates there would be no great difficulty in obtaining an impartial jury in Louisa County for a second trial.

■ The rule to be followed in reviewing a trial court's action in granting or refusing a change of venue is best stated in *Looney* v. *Commonwealth*, 115 Va. 921, 924, 78 S.E. 625, 626 (1913), where we said:

> "The trial court, in the exercise of the powers conferred upon it [to award a change of venire or a change of venue], must of necessity be allowed a wide discretion, and it is the established rule that this court will not reverse the judgment of the trial court unless it plainly appears that such discretion has been improperly exercised. . . ."

All of the Virginia cases, with one voice, hold that a change of venue is a matter within the sound discretion of the trial judge, *Evans* v. *Commonwealth*, 161 Va. 992, 1003, 170 S.E. 756, 760 (1933), and it is only where the record affirmatively shows an abuse of that discretion that the trial court's ruling on such a motion will be reversed. *Greenfield* v. *Commonwealth*, 214 Va. 710, 716, 204 S.E.2d 414 (1974).

■ Here the affidavits introduced by the Commonwealth stand unchallenged by counter affidavits or other evidence. In such circumstances the affidavits should be taken to prove what is within them. *Cf. Uzzle* v. *Commonwealth*, 107 Va. 919, 60 S.E. 52 (1908). While all of the affidavits conclude that a fair and impartial trial was not then possible in Louisa County, they also set forth facts in support of such conclusion, *i.e.*, extensive media reports of the conflicting evidence adduced about the defendant's mental capacity at the first trial, widespread public discussion about the defendant's insanity plea resulting in fixed opinions of a large part of the citizenry on the issue of the

defendant's guilt or innocence and sanity or insanity, and the "bias", "heavy bias", "strong bias", or "local prejudice" then existing in Louisa County which had resulted from those factors, the "feelings" of the community for the deceased judge and the "influence" and standing of the Poindexter family.

In view of the uncontroverted facts set forth in the affidavits, we cannot say that the trial court abused its discretion in concluding that a fair trial was not then possible in Louisa County and in awarding a change of venue.

For the reasons set forth above, the judgments of the trial court will be affirmed.

*Affirmed.*