**In the Matter of the APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT.**

**The WASHINGTON POST COMPANY, Plaintiff–Appellee,**

v.

**Caleb HUGHES, Defendant–Appellant,**

**United States of America; Commonwealth of Virginia, Amici Curiae.**

**No. 90–5550.**

United States·Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1990.

Decided Jan. 2, 1991.

Peter D. Greenspun, Klein & Greenspun, Fairfax, Va., for defendant-appellant.

Stephen Andrew Best, argued (Robert F. Horan, Commonwealth Attorney's Office, Fairfax, Va., on brief), for amicus curiae Com. of Virginia.

William G. Otis, Asst. U.S. Atty., argued (Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for amicus curiae U.S.

Kevin Taylor Baine, argued (Dane H. Butswinkas, Williams & Connolly, Washington, D.C., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and WIDENER and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

This case involves the recurrent tension between the public's right of access to information regarding the workings of the criminal justice system and a defendant's Sixth Amendment guarantee of a fair trial. The specific conflict concerns an affidavit filed in support of a search warrant and whether the contents of that affidavit can be released without extinguishing the rights of the defendant at whom the warrant was directed. That defendant, Caleb Hughes, has been indicted on the charge of abduction with intent to defile. Hughes maintains that the information contained in the affidavit is so prejudicial that he will not be able to obtain a fair trial if it is unsealed. The federal district court in which the affidavit was filed ordered that it be unsealed in its entirety on the basis that properly conducted *voir dire* would ensure an unbiased jury verdict. Finding no abuse of discretion, we now affirm the district court's order.

I.

In December 1989, a five year old girl vanished from a community Christmas party she was attending with her mother in

Fairfax County, Virginia. The Federal Bureau of Investigation became involved in the case and two weeks after the disappearance obtained a search warrant in the United States District Court for the Eastern District of Virginia for defendant Caleb Hughes' car. The request for the warrant was based on an FBI agent's sworn affidavit that summarized the gathered evidence. At that time the affidavit was sealed in order to protect the ongoing investigation and a federal magistrate denied a motion by the *Washington Post* to unseal the affidavit.

The young girl's disappearance sparked extensive media coverage in northern Virginia. Videotapes from the Christmas party were repeatedly shown on television and posters bearing the girl's photograph were disseminated throughout that area. Despite the publicity surrounding the disappearance and subsequent police investigation, the girl has never been found.

On November 19, 1990, almost a year after the girl vanished, a grand jury in Fairfax County indicted Hughes on the charge of abduction with the intent to defile, punishable by twenty years to life imprisonment. Following the indictment, the *Post* renewed its request that the federal court unseal the search warrant affidavit. Hughes opposed the motion on the grounds that release of any of the information in the document would prejudice him and compromise his Sixth Amendment right to a fair trial. Because the investigation had concluded, the United States agreed with the *Post* that most of the material in the affidavit could safely be

released, but maintained that one paragraph should remain sealed because of its prejudicial potential. A federal magistrate held a hearing on the matter and denied the *Post*'s motion to unseal.[1]

The parties then immediately took their dispute to the federal district court. After hearing argument, that court ruled that the affidavit should be released in its entirety and that *voir dire* would ensure that Hughes would be tried before an impartial jury. The court nevertheless temporarily stayed its own order with regard to the one controversial paragraph in order to allow time for further appeal. A circuit judge extended the stay until a panel of this court could hear argument.

## II.

◼◼◼ We begin by detailing the deference that is owed in this area to the determinations of federal district courts. This circuit has held that a newspaper has a common law right of access to affidavits supporting search warrants, although not a First Amendment right of access. *Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir.1989). This "common law qualified right of access to the warrant papers is committed to the sound discretion of the judicial officer who issued the warrant." *Id.* at 65; *see Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). We therefore review the district court's decision whether to grant access to or to seal the document under an abuse of discretion standard.[2] *Goetz*, 886 F.2d at 65.

---

1. There is confusion as to whether the magistrate ordered the entire affidavit to remain sealed or whether the order authorized release of all but one paragraph.

2. Despite the dissent's assertions, it is not the majority but the dissent itself that would effectively overturn the deferential standard of review in *Goetz* by ignoring the hearing on this precise question of disclosure that took place before the district court. The entire point of that hearing was to determine the impact that release of the affidavit would have on achieving a fair trial. In order to make that judgment, the district court had to consider the capabilities of *voir dire*, which is "the preferred safeguard against [the pretrial publicity] threat to fair trial

rights...." *In re Charlotte Observer*, 882 F.2d 850, 855–56 (4th Cir.1989); *see Goetz*, 886 F.2d at 66 (official *must* consider alternatives before sealing document).

The district court gave full consideration to that question in listening to arguments from all parties and in making findings as to the ability of *voir dire* to prevent any prejudice that publicity might cause. Yet the dissent would have us ignore that court's conclusions and instead defer to a magistrate's views on the issue, slip op. at 332 ("It is the magistrate's discretion which is under review here."), despite the fact that magistrates have no experience with the critical procedure because they are expressly prohibited by law even from conducting *voir dire* at a felony

In this case, the district court balanced the public's right of access with the defendant's assertions that release would compromise his Sixth Amendment right to a fair trial. The mere fact that Hughes is asserting a constitutional right does not change the standard by which we review the district court's judgment. The decision in question is similar to any number of judgments a trial court makes that potentially affect a defendant's constitutional rights. For example, it is well established that we review charges that a trial court's curtailment of cross-examination denied defendant a fair trial under an abuse of discretion standard. *See United States v.*

trial. *Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 2245–46 & n. 25, 104 L.Ed.2d 923 (1989).

"[U]nder the common law the decision to grant or deny access is 'left to the sound discretion of the *trial court....*'" *Goetz,* 886 F.2d at 64 (quoting *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 599, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978)) (emphasis added). The dissent's assertion that a reviewing court must ignore the judgment of a district court and defer to the opinion of a magistrate who has no experience with *voir dire* in felony cases involving pretrial publicity cannot stand as a matter of logic or law. The decision in *Goetz* addressed a simultaneous warrant filing and sealing process, involving the government's interest in investigating crime before any indictments have taken place. That this is the particular situation to which *Goetz* speaks is clear from the court's introduction: "[a]s we will discuss ..., whether the papers are sealed *when filed* rests in the sound discretion of the judicial officer who issued the warrant." *Goetz,* 886 F.2d at 64 (emphasis added).

Those circumstances and issues are not the ones before this court, however. This case requires a different balance, one a district court is in a better position to make than is a magistrate. To declare that we are overruling *Goetz* is unfounded; *Goetz* and its adoption of an abuse of discretion standard are the foundation of our holding. It is the dissent that would overturn *Goetz* by failing to take cognizance of the hearing before the district court, and paying the decision of that court *no* deference.

The dissent's suggestion that the majority is somehow denigrating magistrates is as misplaced as would be any suggestion on our part that the dissent was denigrating district courts. Of course we are not saying that a magistrate's discretion will never be reviewed by this court. Where a magistrate holds hearings and issues complete findings and the district court only summarily reviews the ruling, as in *Charlotte Observer,* evaluation of the magistrate's actions may be appropriate. A decision to seal, how-

*Crockett,* 813 F.2d 1310, 1312–13 (4th Cir. 1987); *United States v. Bodden,* 736 F.2d 142, 145 (4th Cir.1984).

The rationale for investing this particular balancing process at the trial court level is obvious. Each specific situation is different and discretion is best exercised "in light of the relevant facts and circumstances of the particular case." *Warner Communications,* 435 U.S. at 599, 98 S.Ct. at 1312–13. A trial court is in the best position to understand the intricate workings of criminal trial procedures, the varying methods of *voir dire,* jurors' responses to pretrial publicity, and whether a defen-

ever, must be "supported by specific findings, and the reasons for rejecting alternatives to sealing in order to provide an adequate record for review." *In re Knight Publishing Co.,* 743 F.2d 231, 235 (4th Cir.1984). Here, the magistrate's order provided a legally inadequate record and the district court properly reconsidered the issue by holding hearings and making findings. *See* 28 U.S.C. § 636(b)(1). The dissent essentially concedes the inadequacy of the magistrate's findings by urging a remand to the magistrate, a course that was neither followed by the *Charlotte Observer* court nor one that comports with the considerations of timeliness in this case. Not even the defendant contends that we should be reviewing the magistrate's discretion.

Equally mystifying is the dissent's suggestion that the Magistrates Act has no applicability to these circumstances. A district court has the inherent power to review the decisions of its magistrates unless a statute or valid court rule empowers a magistrate to make a final decision. *Bruno v. Hamilton,* 521 F.2d 114, 116 (8th Cir. 1975). A magistrate's power to seal or unseal a document derives from the district court's power to take such actions and the dissent points to no statute or court rule empowering magistrates to make final rulings in such cases. No one disputes that Fed.R.Crim.P. 41(b) authorizes magistrates to issue search warrants, but that process is not at issue here. Rule 41(b) simply does not give magistrates indefinite authority over the disposition of district court documents. Section 636(b)(1) provides two standards of review: pretrial matters are subject to a "clearly erroneous or contrary to law" standard, while authorized evidentiary hearings are reviewed *de novo.* Furthermore, duties additionally assigned to magistrates under 28 U.S.C. § 636(b)(3) are reviewed *de novo. See Mathews v. Weber,* 423 U.S. 261, 273, 96 S.Ct. 549, 555, 46 L.Ed.2d 483 (1976). Far from creating workable rules, the dissent would simply scuttle the familiar principles of the Magistrates Act and vary the principles of district court review of magistrates' decisions according to whatever particular subject matter lay at hand.

dant can be granted a fair trial. Such fundamental aspects of trying a case are grist for the trial court's mill. Although appellate courts as well may have insights on these issues, deference is owed the practical experience and accumulated wisdom of a district court in this area. Trial judges are also best situated to understand the subtle factors unique to a given geographic area or population that may either attenuate or enhance the effect of any particular disclosure upon a defendant's rights.

■ The defendant and the Commonwealth of Virginia argue, however, that the United States District Court for the Eastern District of Virginia is not the proper court to rule on release of the affidavit in this case. They assert that only the Fairfax County Circuit Court, the forum in which Hughes will actually be tried, can adequately assess the relevant factors. Despite their protestations, however, they offer no theory on which a transfer of the question could be predicated. It is beyond dispute that the federal district court had jurisdiction here. The affidavit was initially filed appropriately with that court and could be unsealed only by that court. In addition, the balancing act required of the district court undeniably involves a collision of rights with constitutional implications. There is little reason to suspect that the federal court would afford any less consideration than a state court to the defendant's asserted constitutional right or that it would refuse to afford full respect to whatever views the state chose to present. While the federal and state judicial districts are not of course identical, the federal court is hardly ignorant of the characteristics of the region from which the jurors will be drawn; the federal district here includes Fairfax and adjacent counties. That court has had extensive experience with jurors from that area and with the effects of significant pretrial publicity upon them.

■ This is not a situation calling for federal judicial abstention under the doctrine expressed in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The usual case where *Younger* applies is where a defendant requests a federal injunction against pending state court criminal proceedings. *See, e.g., Kugler v. Helfant*, 421 U.S. 117, 123, 95 S.Ct. 1524, 1530, 44 L.Ed.2d 15 (1975). Here, no federal court has been asked to enjoin or to interfere directly in state judicial proceedings. Although the federal court's release of information properly consigned to it will have some effect on the state criminal process, the consequences will be no greater than those from any other publicity that is generated independently of a federal judicial decision. Nor is this a case where the *Post*'s claims could readily be adjudicated in pending state judicial proceedings. The *Post* moved for access to the affidavit, which was filed in federal court. The *Post* is not a party to the criminal prosecution, nor could the state court order the affidavit released. Federal district court was the *Post*'s appropriate forum for relief.

### III.

■ The defendant next contends that the district court abused its discretion in concluding that the search warrant affidavit should be released in its entirety. Hughes also asserts that his interest in a fair trial is paramount to the public's common law right of access and that sealing the paragraph in controversy is both "essential to preserve higher values" and "narrowly tailored to serve that interest" as we require if access is to be denied. *Goetz*, 886 F.2d at 65–66 (quoting *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984) [hereinafter *Press–Enterprise I*]).

We do not agree that the lower court abused its discretion in deciding to release the complete affidavit. The relative importance of the asserted interests at stake is certainly not dispositive, for the inquiry must additionally focus on whether the asserted rights are actually compromised. We are not disposed to overturn the district court's conclusion that release of the paragraph will not deprive Hughes of a fair trial and we emphasize also the importance of the common law right of access to judi-

cial documents related to the criminal justice system.

This is not to say that a future court facing a similar situation would be prohibited from keeping portions of such documents from public view. In *Gannett Co. v. DePasquale*, the Supreme Court emphasized the trial court's discretion in this regard, saying "a trial judge may surely take protective measures even when they are not strictly and inescapably necessary." 443 U.S. 368, 378, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608 (1979). *Gannett* adopts a permissive approach rather than a mandatory one; it anticipates a discretionary call on the part of the trial judge. It cannot be that pretrial publication of affidavits in support of search warrants is altogether forbidden as a matter of law. The balance between the public's right of access via the press and the defendant's right to a fair trial must be carefully struck in each case; it does not invariably fall on one side or the other. We do note, however, that the common law presumption is in favor of access, *Stone v. University of Md. Medical System Corp.*, 855 F.2d 178, 180 (4th Cir.1988), and that "pretrial publicity, even if pervasive and concentrated, cannot be regarded as leading automatically and in every kind of criminal case to an unfair trial." *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 565, 96 S.Ct. 2791, 2805, 49 L.Ed.2d 683 (1976). Indeed, the United States, in its position as *amicus*, agrees that "fair trials ... can be and are held in cases at least as well publicized as this one," and points to the trials of Oliver North, Lyndon LaRouche, and Jim Bakker as examples.

The reason that fair trials can coexist with media coverage is because there are ways to minimize prejudice to defendants without withholding information from public view. With respect to "the potential prejudice of pretrial publicity," this circuit recently observed that *"[v]oir dire* is of course the preferred safeguard against this particular threat to fair trial rights ... [and] can serve in almost all cases as a reliable protection against juror bias however induced." *In re Charlotte Observer*, 882 F.2d 850, 855–56 (4th Cir.1989). "Through *voir dire*, cumbersome as it is in

some circumstances, a court can identify those jurors whose prior knowledge of the case would disable them from rendering an impartial verdict." *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 15, 106 S.Ct. 2735, 2743, 92 L.Ed.2d 1 (1986) [hereinafter *Press–Enterprise II* ].

Our belief that *voir dire* will protect Hughes' right to an impartial jury rests on a number of grounds. First we observe that "there is somewhat of a tendency to 'frequently overestimate the extent of the public's awareness of news.' " *In re National Broadcasting Co.*, 653 F.2d 609, 616 (D.C.Cir.1981) (quoting *United States v. Myers*, 635 F.2d 945, 953 (2d Cir.1980)). Indeed, the district court here noted its experience in successfully selecting juries despite "extensive, even massive" pretrial publicity and observed that jury panels were often unaware of media spotlights.

■ Secondly, even potential jurors aware of the coverage of the girl's disappearance are not disqualified from sitting so long as they can set aside their impressions and adjudge the case on the basis of the evidence presented at trial. *Irvin v. Dowd*, 366 U.S. 717, 722–23, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961). In *Buchanan v. Commonwealth*, the community newspaper published an article four days before the defendant's trial reporting that the defendant's wife had been convicted of four first degree murders as his accomplice. 238 Va. 389, 384 S.E.2d 757, 767 (1989). The fact that some seated jurors were aware of this evidence was held not to deny the defendant an impartial jury. *Id.* at 767–68.

We cannot accept Hughes' argument that potential jurors might not be candid during *voir dire* in a case that was "under the glare of media attention and focus." This argument undervalues the possibility of individual and private *voir dire*. It is quite simple to have those potential jurors who have heard of the case approach the bench and answer more specific questions in private. Such a course may occasion some inconvenience, but inconvenience is a small price to pay for a system of criminal

justice which is at once open to the public and fair to the accused. The federal district court in fact remarked on "the real conscientiousness with which prospective jurors search themselves to find out whether they think they can be fair" under such circumstances.

The judicial system is entitled to respect the critical faculties of those citizens who give of their time as jurors. It verges upon insult to depict all potential jurors as nothing more than malleable and mindless creations of pre-trial publicity. Jurors can be skeptical about the sort of information contained in the paragraph at issue here and are not necessarily naive to the fallibility of various police investigative techniques. They are also quite capable of concentrating upon the evidence presented before them in open court, especially when admonished by appropriate instructions of their sober responsibility to do so.

 Our faith that jurors will render verdicts on the evidence underlies the principle that admissibility at trial cannot be the sole determinant of pre-trial disclosure, as defendant would have it. In fact, if all pre-trial publicity involved only admissible evidence, the tension between the First and Sixth Amendment values would rarely arise. The Supreme Court has noted that a "risk of prejudice does not automatically justify refusing public access to hearings on every motion to suppress," even though such motions involve the very question of admissibility. *Press–Enterprise II*, 478 U.S. at 15, 106 S.Ct. at 2743. Similarly, the Supreme Court of Virginia, in deciding whether a change of venue is appropriate, looks not to whether the publicity concerning the case stems from admissible or inadmissible evidence, but instead to whether it is "factually accurate, temperate, and noninflammatory." *Buchanan*, 384 S.E.2d at 768. If information could never be disclosed simply because it might be inadmissible at trial, much about the world of

crime and the operation of the criminal justice system would be withdrawn from public view.

In sum, we agree with the district court that a properly conducted *voir dire* should guarantee a fair trial for the defendant. We certainly do not find any abuse of discretion in the district court so deciding. Further, we note the availability of additional procedural safeguards of an impartial jury. If *voir dire* proves inadequate, the defense may move for either a continuance or a change of venue. We do not place primary reliance upon either of these procedures, but they do exist as a backstop for those extremely rare instances where twelve unbiased jurors cannot be selected.[3]

## IV.

 Although we conclude that release of the paragraph in question will not preclude Hughes from obtaining a fair trial, we still must discuss the public's right of access; if the press had no right to or interest in the information, the affidavit might yet remain sealed. The public has many significant interests in that material, however. The Supreme Court has recognized, for example, that a "citizen's desire to keep a watchful eye on the workings of public agencies" and "to publish information concerning the operation of government" will justify writs compelling access to judicial documents. *Warner Communications*, 435 U.S. at 597–98, 98 S.Ct. at 1311–12. In the context of the criminal justice system, these interests may be magnified. Violent crime has a profound impact upon societal well-being and often provokes public reactions of fear and outrage, as well as compassion for its victims. "When the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions and emotions." *Press–Enterprise I*, 464 U.S. at

---

**3.** It is unclear what the dissent's point is with respect to Hughes' right under Article 1, Section 8 of the Virginia Constitution to a trial by an impartial jury of his vicinage. That a change of venue is consistent with the Virginia Constitution has been clear at least since the decision in

*Poindexter v. Commonwealth*, 218 Va. 314, 237 S.E.2d 139 (1977). Furthermore, a showing of prejudice requiring a change of venue is a difficult one to make under Virginia law, and the dissent's intimation that a change of venue will occur here is no more than speculation.

509, 104 S.Ct. at 823. Society has an understandable interest not only in the administration of criminal trials, but also in law enforcement systems and how well they work. The public has legitimate concerns about methods and techniques of police investigation: for example, whether they are outmoded or effective, and whether they are unnecessarily brutal or instead cognizant of suspects' rights. The public has an additional right to be aware of patterns of crime such as where, when and how it occurs.

Hughes may argue that these concerns will be met by releasing the information after his trial has concluded, when all danger of prejudice will be past. However, in the context of closure of pretrial proceedings, this court has written that a "minimal delay" of access "unduly minimizes, if it does not entirely overlook, the value of 'openness' itself, a value which is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for later public disclosure." *In re Charlotte Observer*, 882 F.2d at 856. We think that reasoning applies equally to this situation. Openness is a value in itself that the trial judge must consider even when the participants in the trial may wish otherwise. Defendant's assertion that because both he and the Commonwealth's attorney desire sealing, the court must follow, is simply incorrect. The court is not obliged to indulge the requests of the trial participants but must make an independent judgment balancing all the interests. *Cf. Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580–81, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973 (1980) (Burger, C.J.) (agreement among parties and court to close trial was unconstitutional infringement on public's First Amendment right absent inquiry into alternative solutions and specific findings). This is by no means to assert that every sentence of every affidavit in support of a search warrant must always be

released, no matter the circumstances.[4] But the ready resort to suppression is for societies other than our own; an accommodation of competing values remains the commendable course.

### V.

The district court in this case concluded that the defendant's Sixth Amendment right to a fair trial can be accommodated through appropriate use of *voir dire*. The dissenting opinion, by contrast, never considers any alternatives to that of suppression, despite the clear requirement of Supreme Court and circuit precedent that it do so. *See Press–Enterprise II*, 478 U.S. at 15, 106 S.Ct. at 2743; *Nebraska Press*, 427 U.S. at 565, 96 S.Ct. at 2805; *In re State–Record Co.*, 917 F.2d 124, 128–29 (4th Cir.1990); *Goetz*, 886 F.2d at 65–66. The dissent's refusal to consider such alternatives and its determination to reverse the considered discretion of the district court would send a clear signal to judicial officers throughout this circuit that suppression of information with respect to the workings of the criminal justice system and the conduct of criminal investigations is always the preferable course. Sharing neither the dissent's lack of faith in *voir dire* nor its apprehensions about public understanding, we affirm the judgment of the district court.

AFFIRMED.

WIDENER, Circuit Judge, dissenting:

I respectfully dissent. I think the majority has created what amounts to an absolute right of pre-trial common law access; has not considered the direction of *Gannett*; and to that end, has changed a circuit rule of considerable consequence without the intervention of an en banc court.

---

4. We do not address the situation where disclosure of an affidavit would compromise an ongoing investigation or endanger the safety of witnesses. Obviously, the ameliorative effects of *voir dire* are not available to remedy those consequences, and such cases accordingly raise a different set of concerns. The dissent's asser-

tion that we are making disclosure absolute flatly misreads the plain language of the opinion, which emphasizes that discretion is best exercised "in light of the relevant facts and circumstances of the particular case." *Warner Communications*, 435 U.S. at 599, 98 S.Ct. at 1312–13.

## I.

Only last year in *Goetz* we decided that the decision to seal search warrant papers is "committed to the sound discretion of the judicial officer who issued the warrant" and is "subject to review under an abuse of discretion standard." *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir.1989); see *Application of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir.), *cert. denied*, 58 U.S.L.W. 3785 (1990). The majority, however, does not take into account the fact that the magistrate, not the district judge, was "the judicial officer who issued the warrant" in the present case; indeed, a fair reading of the majority opinion leaves the impression that the warrant was issued by the district judge. It is therefore the magistrate's order sealing the paragraph in question, rather than that of the district judge, which must stand unless an abuse of discretion can be shown. It is the magistrate's discretion which is under review here, not that of the district judge, as the majority would have it. See Op. at 326.

Our review should be directed to the question of whether the district court identified any such abuse on the part of the magistrate sufficient to justify disturbing the magistrate's order. In this respect, I suggest that the evidence in the omitted paragraph is so palpably inadmissible and prejudicial that it is beyond argument that the magistrate's decision to refuse to lift the seal from the one paragraph of the affidavit should not be disturbed.

In *Gannett Co. v. DePasquale*, 443 U.S. 368, 378, 99 S.Ct. 2898, 2905, 61 L.Ed.2d 608 (1979), the Court envisioned a fact situation almost on all fours with that present here and warned of the "special risks of unfairness" in cases in which "publicity concerning the proceedings at a pre-trial hearing ... could influence public opinion against a defendant and inform potential jurors of inculpatory information wholly inadmissible at the actual trial." *Gannett*,

443 U.S. at 378, 99 S.Ct. at 2905. The Court went on to state that the danger of publicity at a suppression hearing is particularly acute because it may be difficult to measure with any degree of certainty the effects of publicity on the fairness of the trial. It took notice that when such information is publicized, it may never be kept from potential jurors. In such cases, the Court gave as its opinion that "[c]losure of pre-trial proceedings is often one of the most effective methods that a trial judge can employ to attempt to insure that the fairness of a trial will not be jeopardized by the dissemination of such information throughout the community before the trial itself has even begun." *Gannett*, 443 U.S. at 379, 99 S.Ct. at 2905.

With these thoughts in mind, with an affidavit in hand from the Commonwealth's Attorney of 20 years' experience that release of the paragraph would have "an extreme adverse impact on ... [his] ability to pick a fair and objective jury and to assure Mr. Hughes of a fair trial," and in view of *Goetz* and *Press Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), the magistrate before whom the motion to lift the seal was pending, found that "the common law right of the press and the media is subservient to the higher interest that the defendant is assured the right of a fair and impartial trial." He further found that the premature release of the paragraph in question "would tend to prejudice the right of the accused, Caleb D. Hughes, to a fair and impartial trial." He thus denied the motion of the *Washington Post* to unseal that part of the affidavit in question here.

The content of the affidavit is such that it is not necessary to imagine a worse case in order to decide the case before us. If it is ever possible, in compliance with *Gannett*, to seal pre-trial proceedings to protect a fair trial from untoward prejudicial pre-trial publicity, this is that case.[1]

---

**1.** The majority's effort to circumvent the plain language of *Goetz* fails on several counts. First, the majority argues the federal magistrate was not capable of assessing the ramifications of unsealing the affidavit simply because magis-

trates may not conduct *voir dire* at felony trials. This unwarranted denigration of the capacity of magistrates to make such assessments runs directly counter to our recent insistence upon "deference to the magistrate's undoubtedly bet-

## II.

Even if the standard of review adopted by the majority is correct, that is to say it is the order of the district judge, who did not issue the warrant that we are reviewing, and not the order of the magistrate who did issue the warrant; on account of the same authorities I have cited to sustain the holding and discretion of the magistrate, I would reverse the holding of the district judge because it is my belief that he abused his discretion. There may be a stronger case for non-disclosure, but none has come to my attention.

## III.

With respect to the whole case, I should say that neither the district judge nor our court has given any attention to the right of Hughes to a trial by an impartial jury of his vicinage, as guaranteed to him by Article I, Section 8 of the Virginia Constitution. See *Newcomer v. Commonwealth*, 220 Va. 64, 255 S.E.2d 485 (1979), and *Newberry v. Commonwealth*, 192 Va. 819, 66 S.E.2d 841 (1951), among other cases.

ter vantage point for assessing the local situation." *In re Charlotte Observer,* 882 F.2d 850, 856 (4th Cir.1989). Moreover, we have specifically recognized that it lies within the proper role of a magistrate to weigh "the efficacy of jury *voir dire* as an alternative to the protections that closure might provide...." *In re Charlotte Observer,* 882 F.2d at 856.

Second, the majority asserts that following the plain language of *Goetz* somehow entails a lack of regard for the district court's disposition of this matter. This assertion is puzzling, given that this dissent merely urges adherence to our recent precedents in this area. In *In re Charlotte Observer,* we considered closure and sealing orders entered by a magistrate. Notwithstanding the fact that these orders had been reviewed by the very district judge who in fact tried the defendant, we focused our review solely upon the substantive and procedural aspects of the magistrate's orders. We recognized that "[t]hough the authoritative order of the district court in this matter is now that of [the district judge] 'affirming' the magistrate's ... order, our review is essentially a *de novo* consideration of the constitutionality of the magistrate's directly operative closure order...." *In re Charlotte Observer,* 882 F.2d at 852.

Also directly at odds with the position now taken by the majority is the procedure followed by the *Goetz* court, which directed its review to the magistrate's exercise of discretion. This method of review was directed notwithstanding

While obviously not determinative, I think that Hughes' right must enter into the entire equation. When exercising his discretion with regard to the common law qualified right of access to warrant papers, a judicial officer must consider "all of the relevant facts and circumstances," *Goetz,* 886 F.2d at 65, and "weigh[ ] the interests advanced by the parties," *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 602, 98 S.Ct. 1306, 1314, 55 L.Ed.2d 570 (1978), yet consideration of this constitutionally protected interest advanced by Hughes nowhere appears. It is true that the right to a trial by a jury of the vicinage may be only a right protected by the constitution of the Commonwealth (but *cf.* U.S. Const. Amend. VI); nevertheless it is a valuable right and deserves some consideration under *Goetz* and *Nixon,* however "unclear" that assertion may be to the majority. In this respect, I am taken aback by the insistence, express and implied, of the majority that the district court relied only on the ameliorative effect of *voir dire,* see Op. at

the fact that the magistrate's order had been reviewed by the district court which would conduct the criminal trial. *In re Charlotte Observer* and *Goetz,* in short, reviewed magistrates' orders instead of orders rendered by trial courts actually trying the cases. The majority now seeks to abandon this procedure in a case in which the district judge to which it defers is not even a judge of or member of the court in which the defendant will be tried.

Third, the majority appears to argue for a drastic reinterpretation of our ruling in *Goetz.* Although its argument is somewhat oblique on this point, the majority seems to state that *Goetz* merely upheld the discretion of a magistrate to seal search warrant papers at the time of their filing. Such a characterization of *Goetz* retroactively creates a straw man issue where none existed in the original case. The action of the magistrate under review in *Goetz* was his order, issued four months after his initial decision to seal the papers, denying a motion to unseal. Our opinion in *Goetz* recognized that the need to continue denying access to affidavits might continue well after their filing, and held that such decisions were committed to the sound discretion of the judicial officer who issued the warrant; it nowhere imposed the strict time limitation on this discretion as the majority now holds. The attempt of the majority opinion to draw such untenable distinctions only underscores the difficulty it experiences in trying to circumvent the *Goetz* rule.

326; 326, n. 2; 329; 329; 330; 331, when the district court explicitly based its order on "voir dire of the prospective trial jurors or by a change of venue, or both." There will hardly ever be a case in which a change of venue can't be had that will produce a jury which hasn't heard of particularly damning information. But that is not what *Gannett* provides for. Particularly prejudicial and inadmissible evidence should be sealed under *Gannett* and not released in the name of openness so as to force the defendant, or even the Commonwealth, to ask for a change of venue. Such procedure simply isn't fair, I think, much less legal.

Along the same line, the entire affidavit has been released to the press with the exception of the one particularly damning paragraph, and that also might be released consistent with a fair trial for Hughes as soon as the jury is empaneled on January 28th, only a month hence. No consideration was given by either the district judge or the majority to our opinion in *In re Greensboro News Co.*, 727 F.2d 1320 (4th Cir.1984), which approved just such a short delay.

Finally, I emphasize that the majority nowhere meets or even discusses the specific authorization of *Gannett* for cases in which "potential jurors" may be advised "of inculpatory information wholly inadmissible in the actual trial." *Gannett*, 443 U.S. at 378, 99 S.Ct. at 2905. In such cases the authority of *Gannett* is that "[c]losure of pre-trial proceedings is often one of the most effective methods that a trial judge can employ to attempt to insure that the fairness of a trial will not be jeopardized by the dissemination of such information throughout the community before the trial itself has begun." *Gannett*, 443 U.S. at 379, 99 S.Ct. at 2905.

In sum, whatever the majority opinion states, I think the result is that the majority treats the common law right of access to the papers as absolute, a position I cannot endorse. I would affirm the magistrate and release the affidavit at an appropriate time upon trial.[2]

**2.** The majority continues, in its footnote two, to try to escape our ruling in *Goetz* by advancing a fallback position. This new argument, however, is not only flawed, but also does not support the majority's proposed disposition of this case even if accepted at face value.

The majority states that the magistrate provided a "legally inadequate record" and decides to affirm the unsealing of the affidavit. But even if one accepts its premise that the magistrate failed to comply with the procedural requirements of *In re Knight Publishing Co.*, 743 F.2d 231 (4th Cir.1984), the proper remedy would be to remand the case to the magistrate with an instruction that he support his decision "with a clear statement of reasons, accompanied by specific findings and a discussion of possible alternatives." *In re State–Record Co.*, 917 F.2d 124, 129 (4th Cir.1990); *In re Washington Post Co.*, 807 F.2d 383, 393 (4th Cir.1986). A finding that the magistrate has not provided a specific statement of his reasoning means that a court cannot at present adequately review his order; it does not set a reviewing court free to decide the question for itself. See *In re State–Record Co.*, 917 F.2d at 129.

The opinion of the majority also does not properly characterize the nature of the respec-

tive hearings conducted by the magistrate and the district judge in this case. A fair reading of the opinion leaves the impression that the magistrate merely stated his "views on the issue" while the district court acted by "holding hearings and making findings." This portrayal of a different treatment by magistrate and judge is not borne out by the record, which indicates that the magistrate and the district judge had the same identical record before them when they made their decisions. The district judge took no additional evidence and simply reached a different conclusion than had the magistrate.

Several other aspects of the majority's argument should not pass without comment. The opinion states that "the magistrate's order provided a legally inadequate record and the district court properly reconsidered the issue." I think this statement is incorrect to the extent that it implies that the district court actually found the magistrate's order inadequate or identified any other way in which the magistrate abused his discretion. Rather, the record plainly discloses that the district judge simply proceeded to decide the matter for himself without any consideration of the magistrate's order. The majority's citation of 28 U.S.C. § 636(b)(1) to justify this conduct is inexplicable, because the magistrate in this case was not acting by

virtue of designation of a judge. The magistrate became involved in this matter pursuant to the authority independently granted him under Rule 41 of the Federal Rules of Criminal Procedure, which carefully gives that authority to "federal magistrate[s]," which of course includes all U.S. Magistrates as well as federal judges.

I am further at a loss to understand how the majority can harmonize its concession that a magistrate's order may, in some cases, be the proper subject of our review with its continued assertion that it is the order of the district judge which should be reviewed in this case. While I join in the majority's recital of the need for complete and specific findings to support closure orders, I reject its attempt to create a discretion which may be conferred retroactively upon either inferior judicial officer without previous ascertainment as to whose discretion will be reviewed. To avoid this type of jurisprudence, we must make clear that the discretion to seal warrant papers is vested in a specific judicial officer, whose judgment must stand unless a reviewing court can point to an abuse of discretion. Our recent decisions in this area have completed this task by vesting this discretion in the judicial officer who issued the warrant and the majority's decision to tamper with these rulings is not well advised, I think. I point to the fact that circuit judges and even justices may and do issue search warrants under Rule 41(a), and suggest that if such a search

warrant is sealed by the judge or justice, or if permission to unseal the same be denied, as here, it is the discretion of the issuing judge or justice which should be reviewed, not the discretion of a judge of the district court in which the papers just happen to be filed under Rule 41(g).

The statement by the majority that I essentially concede the inadequacy of the magistrate's findings is simply incorrect. The only reference in the dissent to a remand of the magistrate's finding is in response to the majority's finding that the magistrate provided an inadequate record. That was not suggested by me.

However mystified the majority may be, I am firm in my conviction that the magistrate derived his power to issue a search warrant from Federal Rule of Criminal Procedure 41, especially subsection (a) thereof which states "[a] search warrant authorized by this rule may be issued by a federal magistrate or a judge of a state court of record" and not from § 636(b), which only concerns itself with situations in which "a judge may designate a magistrate" to conduct hearings for him or to hear and determine pre-trial matters. Our decision in *Goetz* specifically directed that it was the discretion of the judicial officer who issued the warrant which was to be reviewed and not the discretion of the district court. A United States Magistrate who issues a search warrant no more depends for his authority on the Magistrates Act than would a state judge, or a U.S. circuit judge, or a justice of the Supreme Court.