# Richmond.

## RICHARDS v. COMMONWEALTH.

### January 16, 1908.

1. CRIMINAL LAW—*Jurors from Another County—Case at Bar.*—While the action of the trial court in directing a jury to be summoned from another county in a criminal case will not be reversed unless it is plain that it has improperly exercised the discretion vested in it, still one accused of crime is guaranteed by the constitution and laws of the state a trial by a jury of his vicinage, and it must be made to appear in some manner that it is reasonably necessary to send to another county for a jury in order to obtain qualified jurors. The evidence in this case does not show that it would have been inconvenient, within any reasonable meaning of that word, to have obtained a jury in the county in which the alleged offence was committed.

2. EVIDENCE—*Opinions of Non-Experts—Impressions.*—A witness must, as a rule, state facts and not his opinions, but, if the constituent facts cannot be fully placed before the jury, a witness who has had adequate opportunity for observation may, after enumerating such of the constituent facts as he can, state the effect on his mind of the numerous phenomena which constitute the impression of appearance, whether of animate or inanimate objects, as that a substance which he had seen and examined was grease, or that a mustache worn by a man was a false mustache, or that a bottle found near the place of a homicide was the same previously seen in the possession of the accused.

3. EVIDENCE—*Admissibility—Unrelated Facts—Res Gestae—Dying Declarations.*—On a trial of a prisoner for the murder of a man who was shot while driving along a public road in his buggy, the statements of the deceased when in a dying condition that a third person, on his invitation, got into his buggy and rode with him, but left it before and beyond where he was shot, are not admissible in evidence either as a part of the *res gestae* or as a dying declaration. They are not so connected with the fact under investigation as to constitute part of it, nor do they relate to the cause of the death of the deceased nor to the circumstances leading up to it.

4. EVIDENCE—*Cross-Examination of Witness.*—No prejudice results to a prisoner from refusing to allow him to cross-examine a witness on matters not brought out in his examination in chief, where the witness is subsequently put on the stand by the court as its witness and the defendant is allowed to cross-examine him on the matters previously excluded.

5. EVIDENCE—*Experiments.*—In order to show by experiment that a prisoner's shoe made a track shorter than his shoe, the experiment must have been made under the same or substantially similar conditions to those which existed at the time the tracks were made.

6. EVIDENCE—*Impeachment of Witness—Judge's Notes.*—The judge's notes taken at a former trial of a case, however full they may be, are not receivable to contradict a witness, because not taken in the discharge of any official duty, but merely for his own private convenience.

7. INSTRUCTIONS—*Jury Fully Instructed—Refusing Other Correct Instructions.*—When the instructions given fully and fairly submit the case to the jury, it is not error to refuse to give other instructions tendered, although they may contain correct statements of the law as applied to the case.

Error to a judgment of the Circuit Court of Floyd county.

*Reversed.*

The opinion states the case.

*Scott & Buchanan, V. M. Sowder, B. H. Custer* and *Howard & Howard,* for the plaintiff in error.

*Attorney-General William A. Anderson,* for the commonwealth.

BUCHANAN, J., delivered the opinion of the court.

The first error assigned by the prisoner is to the action of the circuit court in ordering the *venire* for his trial to be summoned from a county other than that in which the offence was alleged to have been committed and the accused was tried.

The bill of exception taken to this action of the court shows

that the order was made upon the motion of the commonwealth over the prisoner's objection, without any evidence except "the record" in the cause.

The authority for summoning a jury from another county or corporation is found in section 4024 of the Code, and is as follows: "In any criminal case in any court, if qualified jurors not exempt from serving cannot be conveniently found in the county or corporation in which the trial is to be, the court may cause so many of such jurors as may be necessary to be summoned from any other county or corporation by the sheriff or sergeant thereof, or by its own officer."

The contention of the accused is that, under the constitution and laws of the commonwealth, he had the right to be tried by a jury of the county where the crime he was charged with, was alleged to have been committed, where he was indicted and tried, and in which he himself and the principal witnesses for and against him resided; that he could not be tried by a jury from another county or corporation unless qualified jurors could not be conveniently found in his own county; and that "the record" upon which the court based its opinion that qualified jurors could not be conveniently found in his county, wholly fails to show that fact.

As before stated, the commonwealth, to sustain its motion to have a jury summoned from another county, introduced no evidence, and relied solely, as did the court in sustaining the motion, upon what appeared "from the record in the cause." "The record" shows that the accused was indicted for murder at the October term, 1905, of the court. His trial commenced on the 17th, and on the 30th of the month the jury were discharged because they were unable to agree upon a verdict, and the cause continued.

In selecting the panel of sixteen persons, from which the jury at that trial was taken, eight were found free from exception among the sixteen persons summoned for the trial of an-

other person accused of a felony and the other causes to be tried at that term of the court. The court then directed twelve other persons to be summoned from a list furnished by it. Of those eleven were summoned, eight of whom were sworn, examined and found free from exception, and the panel completed.

By consent, the cause was continued at the next February term of the court. At that term the court ordered that the names of thirty-six persons be drawn from the jury box. Of these, the sheriff was directed to summon thirty-two for the next (April) term of the court. Thirty-one of these were summoned, and of them six were found free from exception. To complete the panel, seventeen persons were summoned from a list of twnty-two furnished by the court. Of these, ten appeared, all of whom were found free from exception, and the panel of sixteen secured. At that trial, which continued from the 17th to the 28th day of April, the jury, being unable to agree, were discharged, and the cause continued. At the next (July) term of the court, the order complained of, directing a jury to be summoned from Patrick county for the October term of the court, was entered. These are all the facts which "the record" disclosed as to the necessity of summoning a jury from another county.

The question of the propriety of summoning a foreign jury, under the provisions of section 4024 of the code, although in substance enacted more than fifty years ago, has seldom been raised in this court. The rule, however, which should govern us in passing upon the question is well settled, and is stated by Judge Moncure in *Chahoon's Case,* 21 Gratt. 822, 833, as follows: "In the exercise of the power conferred by this law, the court of trial must, of necessity, have a great deal of discretion, and the appellate court, in revising the judgment, ought not to reverse it for error in this respect, unless it be plain that such discretion has been improperly used." See also *Page's Case,* 27 Gratt. 954.

Upon the former trials, there was comparatively little diffi-culty in finding qualified jurors. Upon the first trial, one-half of those summoned, whose names had been drawn from the jury box for the trial of another person charged with a felony, were found free from exception. The remaining eight required to complete the panel of sixteen were obtained from eleven persons summoned from the list furnished by the court. Upon the second trial, only about one-fifth of the thirty-one sum-moned, whose names were drawn from the jury box, were found to be qualified jurors; but the remaining ten required to com-plete the panel of sixteen were obtained from the seventeen per-sons summoned from the list of names furnished by the court. It would seem from the order of the court that these ten jurors were all that appeared or that were examined from the seven-teen summoned. The order states, that "ten of the persons sum-moned from said *venire facias* from the said list furnished by the court appearing in court, to-wit," and after giving their names the order, continues, "who were sworn and examined by the court, found free from all legal exception, and qualified to serve as jurors." In none of the cases which have come to this court in which this question was involved was a jury summoned from another county upon so little evidence of the necessity or propriety of such action.

In *Wormley's Case,* 10 Gratt. 658, there were affidavits that at a former trial, between three and four hundred persons had been summoned for the trial of the accused, and another who was jointly indicted with him, in order to get a panel for his trial; and that at the term at which the order was made to sum-mon a jury from the cities of Richmond and Petersburg, only one qualified juror was obtained from a *venire* of twenty-four. In addition, it appeared from the testimony of both the com-monwealth and the accused, who was asking for a change of venue, that it would be very difficult, if not impossible, to get qualified jurors in the county where the court was sitting.

In *Chahoon's case, supra,* there had been a mistrial at the March term of the court. At the June term of the court, all of of the *venire* summoned to try the prisoner were present except one, but none of them being found to be qualified jurors, the prisoner moved the court to have other persons summoned as jurors from the city (Richmond), but the court overruled his motion, being satisfied, as the order states, "by evidence adduced and heard that qualified jurors could not be conveniently found in the city," and ordered jurors to be summoned from two other cities. In that case, the sergeant of the city and one of his deputies testified, giving the reasons upon which they based their judgment that it would be inconvenient, and they believed impossible, to get a jury from the city.

In *Sand's Case,* reported in the same volume, at page 871, the accused had been found guilty and the judgment reversed by this court (20 Gratt. 800), and after it had been remanded, there had been a mistrial. On that (second) trial, after there had been an abortive effort to get a jury from the city of Richmond, where the case was tried, a jury was summoned from another city. On the third trial, eighteen of the nineteen persons who had been summoned under the writ of *venire facias* appeared, and none of them being qualified jurors because of opinions formed and expressed, as to the case, the court ordered a jury to be summoned from other cities. In considering the propriety of making such order, the court, by consent, read the testimony heard upon this point at the second trial, part of which was that of the sergeant of the city of Richmond and his deputy, that it would be very inconvenient, if not impossible, to get a jury in the city of Richmond.

The facts upon which the court based its judgment in those cases, respectively, in ordering juries from other jurisdictions, are not mentioned for the purpose of indicating that we think it was necessary to show as much as appeared in those cases, or that the facts upon which the court based its action should be

established in the same manner, but to show that in order for the trial court to exercise the discretion vested in it under section 4024 of the Code, it should appear in some manner that such a course is reasonably necessary in order to obtain qualified jurors. The facts upon which the court based its order in this case do not show that it would have been inconvenient, within any reasonable meaning of that word, to have obtained qualified jurors from Floyd county, whose population was more than fifteen thousand, for the trial of the accused.

Manifestly, it was not intended by the provisions of section 4024 of the Code that an accused person should be deprived of the right of "a trial by a jury of his vicinage" (that is, of the county or corporation where he is to be tried) secured to him by the constitution (section 8, article 1), and the laws of the state (Code, secs. 4018, 4019 and 4024), merely because there had been two previous protracted trials in which the juries had failed to agree, and because in selecting the jury for the first trial, twenty-seven persons had to be summoned in order to get a panel of sixteen qualified jurors, and in obtaining a jury for the second trial, forty-eight persons were summoned, only forty-one of whom it seems had to be examined in order to get a panel of sixteen jurors free from exceptions. If these facts alone are sufficient to authorize a trial court to summon a foreign jury, the right intended to be secured by the constitution and laws of the state would be of little value to the accused, and there would be comparatively few cases in which there was much public interest, or about which there was much excitement, where the court would not find it necessary to summon, or at least feel justified in summoning, a jury from another county or corporation.

We are of opinion, therefore, that the facts disclosed by "the record," upon which alone the court based its action, were plainly insufficient to justify the order complained of, and for that error its judgment must be reversed.

The next error assigned is to the action of the court in admitting improper evidence, and in refusing to properly instruct the jury in reference thereto.

No witness testified that he was present when the deceased was shot. The evidence relied on to establish the commonwealth's charge is entirely circumstantial. Among other things, the commonwealth sought to prove that some eighteen months prior to the killing, the accused had in his possession and was using as a part of his hunting outfit, a bottle containing oiled or greased shot; that the same bottle, containing oiled or greased shot, was found the morning after the killing near the scene of the shooting; and that between "the blind," the point from which it is claimed the shot was fired, and the point where the deceased was when struck there were powder-burnt leaves, and on the leaves some black oily or greasy substance, with which water would not mix. Tice, one of the witnesses whose testimony was objected to, stated among other things, that he "examined the leaves on the bushes between the fence corner and the buggy, in a line with the buggy and the pine bush from which a limb that was shot was hanging, and in a line with the shot; that he found on the leaves a black, oily, greasy something that indicated or looked like oil or some other kind of grease, that glazed the leaves, and the water on them was in beads or puddles and would not mix; that at the time he examined the leaves and at this time, he was of opinion that it was oil or grease." At this point the accused objected, and moved the court to exclude the witness' opinion as evidence; but the court permitted the witness to proceed, who then added that "he could not tell whether it was oil, butter or some other kind of grease, but at the time, he believed it was oil or some other kind of grease, and to the best of his knowledge and belief, it was oil or some other kind of grease. He did not know if a man's belief was as strong as his knowledge."

The objection made to this evidence is that it was merely the witness' opinion and belief.

It is well settled that the opinions of witnesses are generally inadmissible; that they must testify to facts only, and not as to opinions or conclusions based upon facts. But there are exceptions to the rule as well settled as the rule itself. *Va. &c. Chem. Co.* v. *Knight,* 106 Va. 674, 676-7, 56 S. E. 725, and authorities cited; *Tyler* v. *Sites,* 90 Va. 539, 19 S. E. 174; 1 Elliott on Ev., sec. 672.

Where a person has a special opportunity for observation, he may testify to his opinions as conclusions of fact, although he is not an expert, if the subject matter to which the testimony relates cannot be reproduced or described to the jury as it appeared to the w.tness at the time and the facts upon which the witness is called upon to express his opinion are such as men in general are capable of comprehending and understanding; but the facts and circumstances upon which he bases his opinion or conclusion should be stated as far as is practicable, in order that the jury or other tribunal may have some basis upon which to test the value of his opinion. See *Jordan* v. *Commonwealth,* 25 Gratt. 943, 945-6; 1 Elliott on Ev. ss. 675, 676, 678; 17 Cyc. pp. 81-87. In the text-books cited, numerous instances are given where the opinion of witnesses may be received. Among them are identity and the appearance of things animate and inanimate.

In the last-named work it is said, in discussing this question, p. 86, "A witness may, after enumerating such as he can of the constituent facts, state the effect on his mind of the numerous phenomena which constitute the impression of appearance, whether of animate or inanimate objects, it being affirmatively shown that the witness had adequate opportunity for observation; that the constituent facts cannot be fully placed before the jury; and that the ultimate fact is relevant to the issue."

Tested by this rule, which seems to us the correct one, the evidence of Tice was admissible.

Upon the same grounds, the evidence of Conner and Poff, that the mustache worn by the man who had been seen by them, and who the evidence tended to prove was the accused, appeared to them, or was, in their opinion, a false mustache, was admissible.

And for like reasons the evidence of Noah Wilson and Lee Poff, as to the identity of the bottle found near the place of shooting with the bottle they stated they had seen in the possession of the accused some eighteen months prior to the killing, was also admissible.

The instructions "J" and "K", offered by the accused and rejected by the court, mentioned in the same assignment of error, asked the court to tell the jury to disregard the evidence of these witnesses as to the shot-bottle, because they did not attempt to identify it, but only expressed their opinion or belief as to its identity. These instructions were based upon the same erroneous view as was the objection to the evidence when offered, and for the same reason that the court overruled the objection to the evidence, it properly refused to give the instructions.

Dr. Thomas, a witness for the commonwealth, who was called to visit the deceased professionally after he was shot, testified that he reached him about two hours afterwards; that the deceased "was in a state of shock. He realized he was seriously hurt. I think he was conscious of impending death. I think he knew what he was talking about." The witness was then asked: "Did he state anything to you about a man getting in the buggy and riding with him? If so, what did he state?" To which witness replied: "He spoke of that. I asked him about the man getting in the buggy with him near Copper Hill, and he said a man got in the buggy with him near Copper Hill. I asked him if the man asked to ride with him, or did you ask

the man to ride?; and he said, 'I asked the man to ride,' I asked him who it was, and he said the man lived over about Ferrum, and tried to call his name, and seemed to be unable to call it. He was so weak he could not. He said the man got out of the buggy before and beyond where he was shot. That was before Dr. Huff came. He did not say whether the man had a gun or not." .

This question and answer were objected to, but the court overruled the objection. This action of the court is assigned as error.

The evidence was not admissible, either upon the ground that it was part of the *res gestae* or as a dying declaration. It is not claimed that the man who got in the buggy with deceased was the accused. On the contrary that man had been called by the commonwealth as a witness and stated substantially the same as to his getting in and out of the buggy.

In order for a statement to be a part of the *res gestae,* it must, as was said in *Haynes' Case,* 28 Gratt. 942, 946, be "so connected with the very transaction or fact under investigation as to constitute a part of it." *Joyce's Case,* 78 Va. 287, 290; *Barley* v. *Byrd,* 95 Va. 316, 322, 28 S. E. 329, 1 Elliott on Ev., sec. 154.

The fact that some one, other than the accused, at the request of the deceased, rode with him in his buggy, and then left him before reaching the point where he was shot, is in no way connected with the transaction or fact under investigation—certainly not so connected with it as to constitute a part of it.

The statements of the deceased were not admissible as dying declarations, because they did not relate to the cause of the death, nor to any circumstance of the transaction which resulted in death. They do not tend to identify the accused as the guilty party, nor do they establish the circumstances of the *res gestae,* or show any transaction from which death resulted.

*Swisher* v. *Commonwealth,* 26 Gratt. 964, 21 Am. Dec. 330; *O'Boyle's Case,* 100 Va. 785, 795, 40 S. E. 121.

"Declarations," says Elliott on Ev., sec. 336, "of distinct or separate, prior or subsequent occurrences, * * * are not competent evidence. These and other such declarations are not competent because they relate to distinct and separate transactions." See also sections 332, 333; 21 Cyc. 973-975.

Assignments of error based upon bills of exception numbered 5, 12 and 16, may be considered together.

On the first trial, the commonwealth put on the stand a witness named Conner, who testified, among other things, to the measurement of certain tracks leading from the "blind" from which the deceased was shot. On the last trial this witness was again put upon the stand by the commonwealth, but it asked no questions as to the said tracks or the measurements made by him. The defendant, upon his cross-examination, sought to have the witness testify as to the tracks and his measurements. This was objected to by the commonwealth, upon the ground that, in asking about these matters he was making the witness his own. This objection was sustained by the court, but, in sustaining the objection, the court stated that the defendant could recall the witness when the commonwealth was through with its evidence, and examine him as to the tracks. Afterwards, whilst the defendant was introducing his evidence, upon his motion the witness was placed upon the stand by the court as its witness, and the prisoner's counsel was permitted to cross-examine him as to the tracks and measurements. The action of the court in refusing to permit the accused to cross-examine the witness as the witness of the commonwealth is assigned as error.

In the course pursued by the court, no prejudice resulted to the accused.

To rebut the evidence of this witness as to the tracks, which was regarded as favorable to the accused, because it tended to show that the tracks measured by the witness were shorter than

the shoes which the accused wore or could wear, the commonwealth introduced a witness named Jack, who testified that during the second trial of the accused, he had gone to the scene of the shooting and made tracks with his own and the shoes of another, and found that the tracks were shorter in every instance than the shoes.

The objection made to this evidence is that it did not appear that the experiments made by the witness were made under the same conditions as those which existed on the day of the murder. It is not clear from the evidence that the conditions were the same or substantially similar, and unless they were, it seems to be well settled that such experiments are not admissible. 1 Elliott on Ev., sec. 1249; *Richmond P. & P. Co.* v. *Racks,* 101 Va. 487, 44 S. E. 709; *Wise Ter. Co.* v. *McCormick,* 104 Va. 400, 51 S. E. 731. As the case will have to be reversed upon other grounds, it is unnecessary to pass upon this question, but it is proper to say that, if upon another trial, evidence of such experiments be offered, it should not be admitted unless it satisfactorily appears that they were made under the same or substantially similar conditions to those surrounding the shooting of the deceased.

The refusal of the court to permit its notes taken at a former trial of the case to be used for the purpose of contradicting a witness introduced by the commonwealth, is assigned as error.

If the witness had testified differently at the former trial as to any matter which was material and relevant to the issues presented by the trial, proof of such contradictory statement was clearly admissible. But it is generally agreed in this country that the judge's notes are not admissible evidence for that purpose, because the notes, however full they might be, were not taken in the discharge of any official duty, but for the judge's own private convenience. See 3 Wigmore on Ev., sec. 1666, and cases cited in note 1.

The action of the court in refusing to give instructions

marked A, B, C, D, E, F, G, H, I, J and K, asked for by the accused, and in giving instruction No. 3, asked for by the commonwealth, is assigned as error.

The court gave five instructions offered by the commonwealth, ten offered by the accused, and three in lieu of instructions offered by the accused, making in all eighteen instructions. Without discussing in detail any of the instructions given or rejected, it is sufficient to say, that in our opinion the court did not err in refusing to give the instructions rejected by it, as the instructions given fully and fairly submitted the case to the jury, and when that has been done, there is no necessity or propriety in giving other instructions asked for by either party, even if they be correct statements of law as applied to the case, and they cannot subserve any good purpose, and may by their very number and the different manner in which the same proposition is stated confuse the jury. *McCue's Case,* 103 Va. 870, 49 S. E. 623; *Southern Ry. Co. v. Stockdon,* 106 Va. 693, 56 S. E. 713, 1 Va. App. 3.

The errors assigned to the action of the court, based upon bills of exception numbered 13, 15, 17 and 18, need not be specially considered, as the rulings of the court upon the questions raised in each seem to us to have been clearly right.

The refusal of the court to set aside the verdict because contrary to the law and the evidence, and grant the accused a new trial, is assigned as error. As the verdict will have to be set aside and a new trial granted for errors hereinbefore indicated, it will be unneccessary and might be improper to consider this assignment of error, as the evidence may not be the same upon the next trial.

We are of opinion, therefore, to reverse the judgment of the circuit court, set aside the verdict, and remand the cause for a new trial.

*Reversed.*