PRESENT: Kinser, C.J., Lemons, Goodwyn, Millette, Mims, and McClanahan, JJ., and Russell, S.J.

MICHELLE C. HARMAN, ADMINISTRATRIX
OF THE ESTATE OF JOSEPH A. GRANA, III,
DECEASED, ET AL.                                OPINION BY
                                                JUSTICE WILLIAM C. MIMS
v.  Record No. 130627                           June 5, 2014

HONEYWELL INTERNATIONAL, INC.

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Herbert C. Gill, Jr., Judge

This appeal arises out of two consolidated wrongful death actions against Honeywell International, Inc. ("Honeywell"). We consider the admissibility of testimony regarding the contents of an accident investigation report, as well as the admissibility of lay witness opinion testimony. We also address statements made by Honeywell's counsel during closing argument. Finally, we consider whether the circuit court erred in striking portions of a proffered jury instruction defining proximate cause.

I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

On April 27, 2008, Joseph A. Grana, III ("Grana") and his father, Joseph E. Grana, Sr., were killed when the single-engine airplane Grana was piloting crashed shortly after takeoff from Chesterfield County Airport. The takeoff was normal. Approximately ninety seconds into the flight, the plane's nose began moving up and down erratically. The plane then spiraled nose-down to the ground.

The Administrators of the Granas' estates (collectively, "the Administrators") filed wrongful death actions in the Circuit Court of Chesterfield County against Honeywell, the manufacturer of the plane's autopilot system.[1]  The actions were consolidated for trial.

The sole claim pursued at trial was for breach of the warranty of merchantability.  The Administrators asserted that the defective design of the Honeywell autopilot system allowed microscopic debris to enter into one of the gear systems, jamming the gears and causing the plane to become uncontrollable. Specifically, the Administrators claimed that the jammed gears caused a situation known as "runaway trim," which occurs when the autopilot's auto-trim system repeatedly attempts to increase and decrease the plane's pitch, or horizontal incline, in a futile effort to level the plane.[2] Honeywell denied any defective design or malfunction of the autopilot system.  It maintained that the crash was simply the tragic result of an inexperienced pilot becoming disoriented while flying in heavy cloud-cover.

---

[1] The Administrators originally filed wrongful death actions against various other entities and individuals involved in manufacturing components of the plane.  The claims against all defendants except Honeywell were dismissed prior to trial.

[2] The auto-trim system controls the movement of the plane's tail and thus the angle of its ascent or descent.  Specifically, the auto-trim system causes the horizontal stabilizer in the tail to move up or down, which causes the pitch to change.

Grana had begun pilot training just sixteen months prior to the accident, and he had been licensed for approximately fourteen months. On the day of the accident, he was flying in instrument meteorological conditions that require pilots to navigate using navigational instruments rather than visual cues. He had at most one hour of solo flight time in such conditions in this particular plane that was manufactured by Mooney Airplane Company, Inc. (the "Mooney plane"). His previous experience had been in a less-powerful, less-complex plane that was manufactured by Cessna Aircraft Company (the "Cessna plane"). Honeywell's theory was that upon entering the cloud-cover, Grana experienced "spatial disorientation," a phenomenon that occurs when a pilot has no visual cues to determine a plane's pitch and thus flies erratically without knowing it.

Following a nine-day trial, the jury deliberated for one hour before returning a verdict in favor of Honeywell. The Administrators filed a motion to set aside the verdict and for a new trial, which the circuit court rejected. This appeal followed.

The Administrators pursue five assignments of error. They assert that the circuit court erred by (1) admitting into evidence an accident investigation report and testimony regarding its contents; (2) allowing William Abel to testify that he had concerns about Grana's judgment in taking off in the weather

3

conditions present on the day of the accident; (3) allowing Robert Norman to testify regarding his subjective feelings and experiences while flying the Mooney plane and the Cessna plane; (4) overruling their objection to statements made by Honeywell's counsel during closing argument; and (5) striking portions of their proffered jury instruction on proximate cause.

## II. DISCUSSION

### A. The Mooney Report

The Administrators assign error to the circuit court's admission of testimony regarding an accident investigation report prepared by Mooney Airplane Company describing its investigation of the crash (the "Mooney Report"). It describes the plane's movements during flight and the condition of the wreckage, and sets forth the author's conclusions that there was no evidence "that the aircraft engine was not capable of producing power or that the aircraft was uncontrollable at the time of the accident." Portions of the Mooney Report related to the position of the "jackscrew," a component in the autopilot's auto-trim system that corresponds with the position of the horizontal stabilizer in the plane's tail.

The central question in the case was whether contaminated gears in the autopilot system caused the pitch to become erratic, rendering the plane uncontrollable. Consequently, a critical issue at trial was the position of the autopilot's trim setting

4

at the time of impact. The experts for both sides agreed that the trim setting could be determined by examining the jackscrew. The experts also agreed that the jackscrew had six threads exposed at the time of impact. However, they vigorously disagreed regarding whether this position indicated a nose-down or normal takeoff trim setting.

Honeywell's expert in aircraft accidents, Dr. George Clarke, III, testified that the jackscrew was in a "normal and safe takeoff position," and therefore runaway trim could not have been the cause of the accident. Honeywell's counsel directed Dr. Clarke's attention to the Mooney Report to support that opinion. The Administrators objected on hearsay grounds.[3] Honeywell responded that the Mooney Report was admissible pursuant to the "learned treatise" exception to the hearsay rule set forth in Code § 8.01-401.1. The circuit court agreed with Honeywell and overruled the Administrators' objections, holding that the Mooney Report was a "pamphlet" admissible under Code § 8.01-401.1.

Dr. Clarke then read and displayed to the jury statements in the Mooney Report supporting his opinion that the jackscrew was in a normal takeoff position at the moment of impact:

> Q. And what did the Mooney Aircraft Company investigation indicate with respect to that trim position?

---

[3] The record does not indicate why the author of the Mooney Report was not called as a witness to testify regarding its contents.

A. It says in the last sentence, "This indicates an approximate takeoff position trim setting."

. . . .

Q. And again, it is Exhibit 11. And would you show that page from the [Mooney Report]? We're looking at the [Mooney Report] page 0006.

A. Yes. And this was the part that I just read. This indicates an approximate takeoff position trim setting. And to validate what we just spoke about, it says that there were six threads exposed on the jackscrew. And it's the same six threads we were talking about from the full nose-down position.

After being prompted by the court, Dr. Clarke stated that he relied upon the Mooney Report in reaching his conclusions, but he did not testify that it was a reliable source. Additionally, Honeywell was permitted to introduce the entire Mooney Report into evidence as an exhibit.

On appeal, the Administrators argue that the circuit court erred twice, by allowing testimony regarding the contents of the Mooney Report and also by admitting it into evidence. The Administrators claim the report contained inadmissible hearsay statements and did not satisfy the requirements of the "learned treatise" exception under Code § 8.01-401.1.

"[W]e review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." John Crane, Inc.

6

v. Jones, 274 Va. 581, 590, 650 S.E.2d 851, 855 (2007).  However, a trial court has no discretion to admit clearly inadmissible evidence.  Id.

Hearsay statements generally are inadmissible.  See Va. R. Evid. 2:802. One exception to the hearsay rule in civil cases, the "learned treatise" exception in Code § 8.01-401.1, provides:

> To the extent . . . relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals or pamphlets on a subject of history, medicine or other science or art, established as a reliable authority by testimony or by stipulation, shall not be excluded as hearsay.  If admitted, the statements may be read into evidence but may not be received as exhibits.

See also Va. R. Evid. 2:706(a) (same).  Because Code § 8.01-401.1 is in derogation of the common law, we must strictly construe the statute and be careful not to enlarge it beyond its express terms.  See Bostic v. About Women OB/GYN, P.C., 275 Va. 567, 576-77, 659 S.E.2d 290, 295 (2008).

Code § 8.01-401.1 creates an exception to the hearsay rule "in certain limited instances."[4]  Weinberg v. Given, 252 Va. 221, 226, 476 S.E.2d 502, 504 (1996).  First, when learned material is

_____

[4] This Court has long recognized the dangers of admitting hearsay expert opinion testimony.  See McMunn v. Tatum, 237 Va. 558, 566, 379 S.E.2d 908, 912 (1989) ("The admission of hearsay expert opinion without the testing safeguard of cross-examination is fraught with overwhelming unfairness to the opposing party."). In enacting the "learned treatise" exception in 1994, "the General Assembly was clearly aware of those dangers and sought to avoid them by inserting . . . preconditions to the admission of hearsay expert opinions as substantive evidence on direct examination . . . ."  Bostic, 275 Va. at 576, 659 S.E.2d at 294.

7

used on direct examination the testifying witness must have "relied upon" the hearsay statements. Second, the statements must be (a) contained in a published treatise, periodical or pamphlet; (b) on a subject of history, medicine or other science or art; and (c) established as "a reliable authority" by testimony or by stipulation. Dr. Clarke's testimony regarding the Mooney Report failed to satisfy these requirements.

At the outset, we note that the Mooney Report simply is not the type of authoritative literature contemplated by Code § 8.01-401.1. Learned treatises have sufficient indicia of trustworthiness because their authors have no bias in any particular case and are aware that their work will be read and evaluated by others in their field. See United States v. Martinez, 588 F.3d 301, 312 (6th Cir. 2009). However, the Mooney Report lacks such assurances of trustworthiness. The report is not a "published treatise[], periodical[] or pamphlet[]" on a "subject of . . . science." Code § 8.01-401.1. Rather, it is a four and one-half page accident investigation report that was prepared by the plane's manufacturer. Of even greater importance, at the time the report was prepared, Mooney had not yet been dismissed as a defendant in this case. Thus, the Mooney Report was prepared for litigation purposes and "was not subjected to peer review or public scrutiny, and it was not written primarily for professionals with the reputation of the

8

writer at stake." Martinez, 588 F.3d at 312 (internal quotation marks omitted). Consequently, the report lacks the reliability necessary to be a "learned treatise." See Sommerfield v. City of Chicago, 254 F.R.D. 317, 323 (N.D. Ill. 2008) ("[D]ocuments prepared specifically for use in litigation are . . . dripping with motivations to misrepresent" and "are therefore inadmissible hearsay.") (quoting Hoffman v. Palmer, 129 F.2d 976, 991 (2d Cir. 1942)).

Moreover, the Mooney Report was not established as a reliable source through testimony or stipulation as required under Code § 8.01-401.1. Honeywell maintains that by stating that he "relied upon" the report, Dr. Clarke thereby endorsed its authority. We disagree. Code § 8.01-401.1 expressly requires that a report used on direct examination by a party's own expert be both "relied upon" and "established as a reliable authority by testimony or by stipulation." See also Va. R. Evid. 2:706(a) (same); Bostic, 275 Va. at 576, 659 S.E.2d at 294. Dr. Clarke only satisfied the first precondition.

Dr. Clarke did not testify that the Mooney Report was a reliable source typically used by experts in his field. Indeed, he could not offer such testimony because, as established above, it was not a "treatise[], periodical[] or pamphlet[]" on a "subject of . . . science." Further, the parties did not stipulate to the Mooney Report's reliability. Thus, we conclude

9

that the circuit court abused its discretion by permitting Dr. Clarke to testify regarding the conclusions reached in the Mooney Report.

Having determined that the hearsay statements in the Mooney Report were erroneously admitted, we turn to whether their admission was harmless error, as asserted by Honeywell. Honeywell argues that the facts asserted in the portion read into evidence by Dr. Clarke were independently established by other evidence presented at trial. Thus, it claims that the circuit court's admission of the hearsay statements was "merely cumulative of other competent evidence" and therefore harmless error. Greenway v. Commonwealth, 254 Va. 147, 154, 487 S.E.2d 224, 228 (1997); see also Schindel v. Commonwealth, 219 Va. 814, 817, 252 S.E.2d 302, 304 (1979) ("Even though testimony is objectionable as hearsay, its admission is harmless error when the content of the extra-judicial declaration is clearly established by other competent evidence."). We disagree.

The circuit court's error "'is presumed to be prejudicial unless it plainly appears that it could not have affected the result.'" Hinkley v. Koehler, 269 Va. 82, 92, 606 S.E.2d 803, 808 (2005) (quoting Spence v. Miller, 197 Va. 477, 482, 90 S.E.2d 131, 135 (1955)). The Mooney Report contains conclusions that go to the very heart of the case. For instance, it concludes that the position of the jackscrew indicates an "approximate takeoff

10

position trim setting." Honeywell insinuates that other experts provided this same testimony; however, this is not accurate. Dr. Clarke was the only witness to testify that the autopilot's trim setting was in the takeoff position at the time of impact. The Administrators' experts agreed with Dr. Clarke that the jackscrew had six threads exposed, but testified that this represented a nose-down trim position, not a normal takeoff trim position. Likewise, it was the only investigation report to categorically conclude that the plane was not "uncontrollable at the time of the accident."

Moreover, the Mooney Report repeatedly was brought to the jury's attention by Honeywell. Its counsel had Dr. Clarke read from and display parts of the report to the jury. Honeywell also referred to it twice during closing argument. Further, the entire Mooney Report was admitted into evidence as an exhibit and taken into the jury room during deliberations. This exacerbates the prejudice in this case.[5] See, e.g., Norfolk & W. Ry. v. Puryear, 250 Va. 559, 562-63, 463 S.E.2d 442, 444 (1995) (finding that the error was not harmless when an erroneously admitted exhibit could have been reviewed during deliberations).

---

[5] Honeywell argues that the Administrators did not clearly object to the Mooney Report itself being received as an exhibit. Because we find that it was error for it to be used at all, we need not address Honeywell's argument. However, we note that Code § 8.01-401.1 clearly forbids such action: "[i]f admitted, the statements may be read into evidence but may not be received as exhibits." See also Va. R. Evid. 2:706(a) (same).

11

Accordingly, we reject Honeywell's argument that the error by the circuit court was harmless. It does not plainly appear from the record that the erroneous admission of the hearsay statements could not have affected the jury's verdict. Therefore, we will reverse the judgment appealed from and remand the case for a new trial. See Bostic, 275 Va. at 578, 659 S.E.2d at 296. While this error alone requires reversal of the circuit court's judgment, we will address the Administrators' remaining arguments because they involve issues that are likely to arise in the retrial of the case. See, e.g., Velocity Express Mid-Atlantic, Inc. v. Hugen, 266 Va. 188, 203, 585 S.E.2d 557, 566 (2003) (the Court "must consider certain issues that probably will arise upon remand").

B.  Lay Witness Opinion Testimony

The Administrators also assign error to the circuit court's admission of certain opinion testimony by William Abel and Robert Norman.[6] We address these two assignments of error concurrently.

(1)  William Abel's Testimony

William Abel was Grana's friend and flight instructor. He had extensive experience flying with Grana in the Mooney plane and the Cessna plane, including in poor weather conditions requiring the use of navigational instruments.

---

[6] Abel and Norman were deposed by Honeywell prior to trial. The depositions were videotaped, and the portions determined to be admissible by the circuit court were played for the jury.

12

At trial, the jury heard testimony from Abel that he and Grana had agreed that Grana would not fly the Mooney plane in instrument meteorological conditions without an instructor. Abel testified that he monitored the weather forecast a few days prior to the crash, and that he and Grana discussed the weather forecast via email. Abel testified that he was not at Chesterfield County Airport on the day of the crash, but that he checked the weather report as soon as he learned of it. Over the Administrators' objection, Abel testified that he had concerns about Grana's judgment in deciding to fly on that day:

> A. While [Grana] exercised safe judgment during almost all of our flying, the fact that he took off on this day makes -- makes me have some concerns about the judgment, taking off into conditions based on the weather that -- that was reported to me.
>
> . . . .
>
> Based on the -- all the flying I've done with [Grana] and the conversations that we had, I had concerns about why he would take off into those conditions on that day.
>
> . . . .
>
> Q. With respect to Mr. Grana's lack of experience in this airplane in actual [instrument meteorological] conditions and the judgment that he used in taking off that day, in your opinion, was that a cause or contributing cause of this accident?
>
> A. I don't know what happened in that airplane. In my opinion, it wasn't the best of judgment to take off in those conditions.

13

On appeal, the Administrators argue that Abel's testimony regarding Grana's judgment lacked sufficient foundation and was improper opinion testimony by a lay witness that invaded the province of the jury.

(2)  Robert Norman's Testimony

Robert Norman was a co-owner of the Mooney plane along with Grana.  He obtained his pilot's license around the same time as Grana, and both men transitioned from flying the Cessna plane to the Mooney plane.  At the time of the crash, Norman had not been endorsed to fly the Mooney plane solo.  He had five to ten hours less flight time in it than Grana.

Over the Administrators' objection, the jury heard testimony from Norman regarding his personal experiences flying the Mooney and Cessna planes.  Norman compared them, opining that the Mooney plane was faster, more powerful, more complex, and more difficult to maneuver than the Cessna plane.  Norman testified that he had a "healthy fear" of the Mooney plane and that he did not feel prepared to fly it solo because of its complexity.  He also stated that he had never perceived problems with the flight controls in the Mooney plane.

On appeal, the Administrators challenge Norman's testimony regarding his subjective feelings and experiences flying the Mooney and Cessna planes.  The Administrators argue that such

14

testimony was improper opinion testimony by a lay witness, irrelevant, and prejudicial.

(3) Analysis

As stated previously, we review a trial court's decision to admit or exclude testimony using an abuse of discretion standard. See John Crane, Inc., 274 Va. at 590, 650 S.E.2d at 855.

Neither Abel nor Norman was qualified by the court as an expert. Thus, we review their testimony in light of Rule 2:701, which states:

> Opinion testimony by a lay witness is admissible if it is reasonably based upon the personal experience or observations of the witness and will aid the trier of fact in understanding the witness' perceptions. Lay opinion may relate to any matter, such as -- but not limited to -- sanity, capacity, physical condition or disability, speed of a vehicle, the value of property, identity, causation, time, the meaning of words, similarity of objects, handwriting, visibility or the general physical situation at a particular location. However, lay witness testimony that amounts only to an opinion of law is inadmissible.

To summarize, Rule 2:701 permits lay witness opinion testimony if (1) "it is reasonably based upon the personal experience or observations of the witness;" and (2) it "will aid the trier of fact in understanding the witness' perceptions."

The first prong of Rule 2:701 requires personal knowledge. Clearly, both Abel's and Norman's testimony satisfied this requirement. Abel was Grana's flight instructor and had flown with Grana in various weather conditions. He had extensive

15

personal knowledge of Grana's flying abilities and was well-positioned to testify regarding whether Grana should have been flying in instrument meteorological conditions. Likewise, Norman's testimony was based on his personal experiences flying the Mooney and Cessna planes. He was an appropriate witness to explain the difference between the two planes because he had owned both planes and had experience flying them.

The second prong of Rule 2:701 speaks to the necessity of lay opinion testimony. Generally, lay opinion testimony is only admitted when "the witness's information for some reason cannot be adequately conveyed to the court by a detailed recital of the specific facts upon which the opinion is based." Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 13-3[a], at 731 (7th ed. 2012). For instance, this may be because the witness's impression is one that cannot by its very nature be broken down into constituent parts. See Richards v. Commonwealth, 107 Va. 881, 889, 59 S.E. 1104, 1107 (1908) (holding that a lay witness's opinion that a substance was oil or grease was admissible because the subject matter could not be fully described to the jury as it appeared to the witness).

However, if the witness can conveniently relate the facts in a manner that will provide the jury with an adequate understanding of the issue, the witness's opinion based on those facts is unnecessary and therefore inadmissible. See Friend &

16

Sinclair, supra, § 13-1[b], at 726; see also Denis v. Commonwealth, 144 Va. 559, 574, 131 S.E. 131, 135 (1926) ("The test of admissibility of a conclusion of fact of a nonexpert witness is this: Is it clear that the jurors would or could have been fully and as exactly furnished with the data which formed the basis for the conclusion of the witness as the latter was? If so, the conclusion is inadmissible in evidence.") (internal quotation marks omitted).

We find that Abel's testimony regarding Grana's judgment was unnecessary and therefore should have been excluded pursuant to Rule 2:701. Abel testified at length regarding Grana's inexperience flying the Mooney plane in instrument meteorological conditions. He testified that he and Grana agreed that Grana would not fly it in such conditions without an instructor, and that Grana specifically assured him that he would not fly on the day of the crash if such conditions were present. That Abel believed Grana exercised bad judgment in deciding to fly on the day of the crash was implicit in the rest of his testimony. Expressing this opinion did nothing further to "aid the trier of fact in understanding [Abel]'s perceptions." Va. R. Evid. 2:701. Rather, it was superfluous. The jury was fully capable of listening to the specific facts recited by Abel and reaching its own conclusion based on those facts.

Moreover, Abel's testimony was an impermissible assessment of Grana's culpability for the accident. While the passage of Code § 8.01-401.3 in 1993 expanded the ability of expert and lay witnesses to express opinions on ultimate issues of fact, "mere assessments of liability or its constituent findings are not admissible." Friend & Sinclair, supra, § 13-5[a], at 742. This Court has held that witnesses are precluded from "characterizing acts or conduct as careful, careless, cautious, dangerous, good management, in the line of duty, necessary, negligent, omitting anything possible, practicable, proper, prudent, reasonably safe, skillful, usual or unusual." Davis v. Souder, 134 Va. 356, 362, 114 S.E. 605, 607 (1922) (internal quotation marks omitted). Abel's testimony that "it wasn't the best of judgment [for Grana] to take off" characterized Grana's actions as careless or unsafe. This was improper lay opinion testimony directed at Grana's culpability or blameworthiness for the crash.

The circuit court did not abuse its discretion in admitting Norman's testimony. Norman did not address Grana's judgment or flying abilities. Rather, his testimony focused solely on his own experiences flying the Mooney and Cessna planes. Further, Norman's opinion testimony as to the differences between the two planes was not unnecessary. It was impossible for Norman to adequately convey the differences between them without couching these differences in comparative terms. Norman's statements that

18

the Mooney plane was faster, more powerful, more complex, and more difficult to maneuver than the Cessna plane aided the jury in understanding Norman's experiences and therefore qualified as proper lay opinion testimony pursuant to Rule 2:701.

Finally, Norman's testimony was relevant and not unfairly prejudicial. It helped the jury understand Grana's transition between the Mooney and Cessna planes. This was relevant because it bore on Grana's ability to handle the Mooney plane on the day of the crash and demonstrated some of the problems he may have encountered. We cannot say that the probative value of this testimony was substantially outweighed by the danger of unfair prejudice. Va. R. Evid. 2:403(a). Thus, Norman's testimony was properly admitted. See Gamache v. Allen, 268 Va. 222, 227-28, 601 S.E.2d 598, 601 (2004) ("Evidence that is factually relevant may be excluded from the jury's consideration if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice.").

Accordingly, we find that the circuit court abused its discretion in admitting Abel's opinion testimony regarding Grana's judgment. However, it did not abuse its discretion in admitting Norman's testimony.

C. Statements During Closing Argument

The Administrators next challenge certain statements made by Honeywell's counsel during closing argument as violating a

19

pretrial order and Virginia law. Prior to trial, the Administrators filed a motion in limine to exclude any evidence or argument "as to the number of [Honeywell] autopilots sold or as to the so-called 'safety history' of [the Honeywell] autopilots." The circuit court granted the motion.

Yet, during closing argument Honeywell's counsel stated:

They walk you into this courtroom and try to convince you of this theory. Don't have one test. Didn't sprinkle any debris in it to show does this happen. How can it run away? Don't you expect that out of them? If they have the burden of proof here to prove this happened, why didn't they show you this stuff? Why didn't they prove it? It's never happened before. There is no evidence this has ever happened anywhere any time.

(Emphasis added.) The Administrators promptly objected, arguing that Honeywell's counsel's statements violated the order granting the motion in limine. The court overruled the objection and directed Honeywell to "proceed." A few minutes later, Honeywell's counsel again argued that the autopilot system had a "[s]afe design for 35 years, and no complaints," and that there was "[n]o evidence of a prior problem at all ever."

Immediately following Honeywell's closing argument, the Administrators requested a conference outside the jury's presence. The Administrators restated their objection and asked the court to issue a cautionary instruction directing the jury to disregard the improper statements. The court declined, stating: "I had previously told the jury that what [the attorneys] tell

20

them is not evidence, and they should not consider it as such, we'll leave it at that. Overrule the motion."

The Administrators again contested the court's ruling in their motion to set aside the verdict and for a new trial. The court denied the motion, finding that the statements were proper because they "were made in reference to the testimony of the parties' experts. No expert, for either side, testified that the alleged cause of this crash was the cause of another crash that he had investigated, and [Honeywell] was entitled to make that argument."

On appeal, the Administrators assert that the court's pretrial order properly excluded any argument regarding the safety history of the autopilot system, see Goins v. Wendy's Int'l, Inc., 242 Va. 333, 335-36, 410 S.E.2d 635, 636 (1991) (holding that evidence of the absence of other incidents is inadmissible). They argue that Honeywell violated this ruling by repeatedly telling the jury that there was an absence of other incidents. Honeywell responds that its counsel's statements merely summarized the testimony of the Administrators' experts, who testified without objection that they had not investigated any other crash caused by debris in the gears of an autopilot system. We disagree.

Honeywell's counsel's statements went beyond summarizing the experts' testimony. He did not place his remarks in the context

of any particular expert's testimony.  Rather, he made sweeping proclamations that the autopilot system had a "[s]afe design for 35 years, and no complaints;" that the alleged debris-in-the-gears problem had "[n]ever happened anywhere any time;" and that there was "[n]o evidence of a prior problem at all ever."  These statements violated the court's pretrial order excluding argument regarding the safety history of the autopilot system.  Because Honeywell did not assign cross-error to the court's pretrial order, it is the law of the case.  See Little v. Cooke, 274 Va. 697, 722, 652 S.E.2d 129, 144 (2007) (holdings uncontested on appeal become "the law of the case"); Board of Supervisors v. Stickley, 263 Va. 1, 6, 556 S.E.2d 748, 751 (2002).  Consequently, it was error for the circuit court to allow Honeywell's counsel to make statements in contravention of its own order.

D. Jury Instruction on Proximate Cause

The Administrators finally contend that the circuit court erred in striking portions of their proposed jury instruction on proximate cause.  We disagree.

At trial, the Administrators proffered the following jury instruction defining proximate cause:

> A proximate cause of an accident, injury, or damage is a cause which in natural and continuous sequence produces the accident, injury, or damage.  It is a cause without which the accident, injury, or damage would not have occurred.  There may be more than one

22

proximate cause[].  Proximate cause need not be established with such certainty so as to exclude every other possible conclusion.

(Emphasis added.)  Honeywell objected to the last two sentences. It noted that, at the time of trial, these sentences were not included in the Virginia model jury instruction defining proximate cause.  See 1 Virginia Model Jury Instructions – Civil, No. 5.000 (2012).  The circuit court struck the last two sentences of the proposed instruction over the Administrators' objection.

On appeal, the Administrators argue that the court erred in striking those sentences.  They claim that the proposed instruction accurately stated Virginia law, and that the last two sentences were necessary to dispel any erroneous impression that there could only be one proximate cause of the accident.

Our sole responsibility in reviewing jury instructions is "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009) (internal quotation marks omitted).  We review de novo whether an instruction correctly states the law and whether it finds support in credible evidence. See Lawlor v. Commonwealth, 285 Va. 187, 228-29, 738 S.E.2d 847, 870 (2013).  "When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of

23

the instruction." Id. at 228-29, 738 S.E.2d at 871 (internal quotation marks omitted).

The Administrators primarily rely on Holmes v. Levine, 273 Va. 150, 159, 639 S.E.2d 235, 239 (2007), in which we reversed a jury verdict where the circuit court refused to instruct regarding multiple potential proximate causes. This reliance is misplaced. In Holmes, we narrowly held that the circuit court erred in refusing the instruction "[i]n light of the Administrator's theory of the case and the evidence in support of that theory." Id. at 160, 639 S.E.2d at 240. In that case, there were two possible proximate causes of the decedent's death: cancer itself and the defendant physician's negligent delay in diagnosing the cancer. The Administrator in Holmes put on considerable evidence regarding both causes. Id. at 159, 639 S.E.2d at 239. Here, however, the Administrators' position was that the autopilot system was the sole cause of the accident. The Administrators' experts opined that other possible causes of the accident had been considered and rejected. The experts explicitly refuted the argument that Grana's own error could have contributed to the crash.

In light of the Administrators' theory, the granted instruction fully and fairly covered the principle of proximate

causation.[7]  It "refers to 'a proximate cause' instead of 'the proximate cause'" precisely because "there may be more than one proximate cause of an injury."  See 1 Virginia Model Jury Instructions – Civil, No. 5.000 (2012) (commentary).   The jury repeatedly was instructed that it could find Honeywell liable if it concluded that Honeywell's alleged breach of warranty was "a proximate cause" of the crash.[8]  Thus, the first additional sentence proposed by the Administrators added nothing that was not already encompassed by the given instructions.  While an instruction may not be withheld from the jury solely because it varies from the model instruction, see Code § 8.01-379.2, it is not error for a court to reject proposed additions to a model instruction that are redundant.  See Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984); Wilson v. Brown,

---

[7] The definition of proximate cause provided to the jury was identical to the corresponding Virginia model jury instruction at the time of trial.  We note that the model jury instruction was amended post-trial to add the following sentence:  "There may be more than one proximate cause of an accident, injury, or damage." 1 Virginia Model Jury Instructions – Civil, No. 5.000 (2014). However, the commentary clarifies that this sentence should only be included in cases "[w]here the evidence . . . shows the possibility of more than one proximate cause of an accident." Id. As discussed, that was not the case here.

[8] The given proximate cause instruction used the phrase "a cause" three times.  It never referred to "the cause" of the accident.  Likewise, the rest of the given instructions consistently referred to "a proximate cause" and never referenced "the proximate cause" of the accident.  By contrast, in Holmes we emphasized that the circuit court improperly used the definite article "the" when instructing the jury since concurrent causes were alleged.  273 Va. at 160, 639 S.E.2d at 240.

136 Va. 634, 637-38, 118 S.E. 88, 89 (1923) ("Where the jury has been sufficiently and correctly instructed on any point, it is not error to refuse further instructions on that point, however correct a tendered instruction may be.").

Finally, the second proposed additional sentence could have confused the jury regarding the burden of proof. The jury was separately instructed to find for the Administrators if they "proved by the greater weight of the evidence" that, among other things, the autopilot system was a proximate cause of the accident. It also was specifically instructed as to the meaning of the phrase "greater weight of all the evidence." These instructions were clear and consistent. Adding words such as "certainty" could have heightened the potential for confusion.

Accordingly, we find that the circuit court did not err in striking the last two sentences of the Administrators' proposed instruction on proximate cause.

### III. CONCLUSION

For the reasons stated, we will reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>